HOUSTON & TEXAS CENTRAL RAILROAD CO. v. MICHAEL TIERNEY.

No. 6042.

1. **Charge—Issue not made in the Evidence.**—Where there is no evidence to support an issue raised in the pleading it is error to submit it to the jury.

2. **Same—Release.**—Where in a suit for damages against a railway company the defendant pleaded a release which was produced upon the trial and to which the plaintiff had replied that it had been obtained from him when too drunk to know what he was doing, and without his having opportunity of knowing its contents. On the trial it was shown that the release was signed after deliberation and when apparently sober, plaintiff not denying his signature, but testifying to not remembering signing it; *held,* error to submit to the jury the replication of drunkenness or of his signing it without having had an opportunity to understand its terms.

APPEAL from Dallas. Tried below before Hon. George N. Aldridge. The facts are sufficiently set out in the opinion.

*R. De Armond,* for appellant.—It was error for the court to charge upon a state of facts not in evidence. Railway v. Faber, 63 Texas, 344.

*R. E. Cowart* and *W. H. Johnson,* for appellee.—If the release relied upon was obtained by fraud, if it was without sufficient consideration, if

advantage was taken of his necessity, if appellee signed it without knowing its contents, or if appellant did not comply with the terms of said release, then it was not binding on appellee. These are all questions of fact which were passed on by the jury adversely to appellant. Burch v. Smith, 15 Texas, 219; Parsons on Contracts, vol. 2, p. 683, note F; Wharton on Agency, secs. 636–7 and notes; Kerr on Fraud and Mistake, secs. 189–90; Story's Equity, vol. 1, sec. 251; Stewart v. Stewart, J. J. Marshall, Ky., p. 185; Mullen v. Old Colony Railroad, 34 Am. Rep., 349; Smith v. Martner, 5 Wis., 351; Kelly v. Sheldon, 8 Wis., 258; Howard v. Town of Ostecola, 22 Wis., 453; Wadkins v. Brant, 46 Wis., 419; Bussian v. Mich. Tar. & W. Ry. Co., 56 Wis., 325; Eagle Pak. Co. v. Deffers, 94 Ill., 598; Ryles v. Doyle, 18 Kansas, 858; Raskins v. Knickerbocker S. Co., 21 How. (N. Y.), 293.

Hobby, Judge. — The verdict in this case for the sum of $5000 in favor of plaintiff, who was a "section boss" of defendant, is based upon his testimony.

In going to the work in the line of his service, that of loading flat cars with old iron, he was ordered by the conductor in charge of the construction train to climb over a box car by means of a brake rod attached thereto. In attempting to obey this order the brake rod, by reason of its defective attachment to the car, and because the car also was rotten, gave way. The plaintiff was precipitated upon a pile of iron negligently laid near the track, and received from this fall serious personal injuries, which are conceded to be of such a character as would remove any complaint as to an excessive verdict. The plaintiff says he "did not know the defective condition of the brake rod, its fastenings, or that of the car to which it was attached." He states that after the injury he heard the car repairer of defendant say in the presence of thirty persons at Bremond that the car had been condemned. His account of the manner in which his injuries occurred is contradicted by all the witnesses; so also is his evidence as to the condition of the brake rod and car. It is in proof that these were in good condition, and in all respects sufficient for and adapted to the purposes for which they were intended and to which they were applied.

The defendant introduced in evidence a release executed by the plaintiff subsequent to his recovery from the injuries above referred to. This instrument recited the fact of plaintiff's injury in defendant's employ; his recovery therefrom; the institution of this suit in the District Court of Dallas County; the denial by defendant of any negligence or liability for said injury; the acceptance by plaintiff of an offer to compromise to this effect, that if defendant would re-employ plaintiff in its service, pay him one dollar and costs of the suit, plaintiff would accept the same in full satisfaction and accord of all claims which he had or might have, or were in any manner incident to the accident and injury above set

forth.   It also recites the payment to plaintiff of the amount specified and the promise to employ plaintiff and the acceptance of the terms by plaintiff, and authorizes R. De Armond, an attorney of said court, to dismiss the suit.   This release is signed by the plaintiff on the 11th day of September, 1884, and subscribed by three witnesses, White, Fanning, and Kelley, employes of defendant.

Fanning stated that he was "roadmaster of defendant; had known plaintiff for six or seven years.   Saw plaintiff sign the above described instrument.   He had told plaintiff he thought his suit was very foolish and he would make nothing out of it.   What he said to plaintiff was as a friend."   Witness testified that "Quinlan, superintendent of defendant road, gave him the release to take to plaintiff for his signature.   He did so, handed it to plaintiff and told him to read it.   Plaintiff was at work at the depot (Thornton) at the time.   Plaintiff seemed to read it; witness did not read it to him.   Saw him sign it, and gave him a silver dollar.   Plaintiff was not drunk when he signed it, nor did he see anything unusual in his appearance."

Kelly "had known plaintiff for the same length of time.   Saw plaintiff sign the instrument.   White, Fanning, plaintiff, and witness and others were present.   Tierney was called by Fanning or me to come to depot.   Fanning told him to read it over and what it was.   He gave plaintiff a silver dollar.   Plaintiff was not drunk; was sober and rational as he is here to-day.   During witness' acquaintance with him had seen him under the influence of liquor.   Did not see plaintiff read the instrument."

White testified that "the instrument was brought to him with plaintiff's name subscribed, and he was asked to sign it as a witness.   Said he could not do so, as he had not seen it signed."   He then "took it to plaintiff, who was at work, and gave it to him to read.   He took it and appeared to read it."   And witness "inquired if he had signed it for the purpose therein stated."   He replied in the affirmative.   He exhibited no more appearance of intoxication than he does now—nothing unusual in his appearance."

Hudson testified that he "saw the plaintiff sign the release.   Heard Fanning say to plaintiff before plaintiff signed it, 'be certain you know what you are doing before you sign it.'   Was not called upon to sign as a witness.   Plaintiff had the instrument in his hands and had full opportunity to examine it and was cautioned about signing it or words to that effect."

Plaintiff was shown the instrument offered in evidence and was asked if the signature was his.   He replied:   "It looks like my signature as I used to make it on the company's pay rolls; I can read and write; can read this (the instrument) plain enough.   I have no recollection of ever signing the instrument or seeing it until it was filed with the papers in

this cause a short time before the trial of this case the first time, when it was shown me by my attorneys."

This is the evidence with reference to the execution of the instrument by the plaintiff. It was pleaded as a defense by the defendant, and the replication to the plea was a denial of its execution and a special answer in substance that if the plaintiff signed it "it was done under the influence of intoxicating liquors furnished by defendant's agents, and when by reason thereof he was incapable of understanding what he was doing," and pleading that the manner and circumstances under which the release was obtained from him constituted it a fraud and made the same absolutely void.

It appears from the evidence that the plaintiff, after executing the release, worked in the employment of the defendant, but for what length of time is not shown. It seems that he was discharged by one of his superior officers because his work was not satisfactory, and by another for drinking.

With this evidence before the jury in support of the plaintiff's plea denying the execution of the release the court charged the jury in this language:

"With reference to the release plead by defendant you are instructed that if plaintiff signed it when he was so drunk that he did not know what he was doing, then the release is not binding upon him. If plaintiff signed it without having an opportunity to understand its terms, then it would not be binding upon him and would not defeat his claim for damages."

It is altogether unnecessary to enter into any discussion for the purpose of showing that the charge quoted has no application whatever to the case as made by the evidence of both parties. We think it useless also to make any inquiry as to the correctness of the instruction as a question of law. For if it be conceded to be a faultless declaration of a well established principle of law it is manifestly inapplicable to the evidence in the case. It is not pretended that the "plaintiff signed it without having an opportunity to understand its terms." The plaintiff does not in his testimony deny signing it; he states nowhere in the lengthy and specific narrative he gives of the circumstances attending his injury and his service in defendant's employ that he did not understand it. He fails to mention that he was intoxicated or under the influence of liquors furnished by any one. All the other witnesses expressly refer to the fact of an entire absence of such condition upon the part of the plaintiff at that time, and neither these witnesses nor plaintiff testify to any circumstances tending to establish this. The charge, we think, in this respect submits an issue not made by the testimony. It was obviously a question affecting the rights of the parties, but it was not made so by the evidence.

It is a fundamental principle that a charge presenting a controlling

issue and plainly decisive of the rights involved must be predicated upon evidence in support of pleas setting forth these rights. The violation of this universally safe rule results, as illustrated in this case, in the sub-mission to the jury of a vital issue through the medium of a charge which can only reach the jury through the channel of pleading and proof. Under plaintiff's plea he had the right to show that the release and satisfaction of any claim he had to damages was fraudulently ob-tained from him, or that when he signed it "he was so drunk that he did not know what he was doing." And if this had been shown, or had there been evidence tending to establish this, unquestionably it would have been his right to have the jury instructed as to the legal effect of this state of facts upon his rights if the jury believed them.

But in view of the full proof of the execution of the release by plaintiff and the absence of any evidence from him impeaching it we do not think there was any basis for the instruction. There are other errors we think contained in the record, but we are of opinion that the error mentioned disposes of the case. We think the judgment should be reversed and the cause remanded.

*Reversed and remanded.*

Adopted December 18, 1888.