THE TEXAS & PACIFIC RAILWAY COMPANY
v. CORA MOORE.

No. 1151.

**1. Leased Railroad—Liability of Lessor—Bridges.**—A railroad company that gives another company permission to run cars over its track must be held to the exercise of ordinary care in the construction and maintenance of bridges along the track, for the protection of the servants of the lessor company as well as its own; and this requires that the bridges be so constructed as to permit the safe operation of ordinary cars through them in the usual way.

**2. Same—Definition of Ordinary Cars.**—By ordinary cars is not meant simply those that are in most common use, but it includes those that have come into such general use upon the different railroads of the country that their presence in trains passing over the track should be anticipated in the regular conduct of the business.

**3. Same—Liability of Lessee.**—If the lessor company construct its bridges of sufficient height to permit the operation of ordinary cars through them in the usual way, and the lessee company receives into its train a car of peculiar construction and unusual height, and fails to give notice thereof to its employes, and one of them is killed on that account while in the ordinary discharge of his duties, the lessor is not liable.

**4. Railway Company's Rules—Burden of Proof.**—Where the evidence shows an injury to a servant to have occurred through the violation of an established rule of the master, the burden is upon the servant to show that he had no actual knowledge of the rule, and that its existence had been so concealed or defectively published that he could not by the exercise of ordinary care on his part have acquired such knowledge.

**5. Charge of Court—Assuming Fact Proved.**—Where the evidence so clearly and indisputably establishes a given fact that no issue can properly be raised as to its existence, the court should assume the existence of such fact, and charge accordingly. *Stephens, J., dissenting.*

**6. Same—Charge Without Evidence.**—The giving of a charge submitting a material issue to the jury to sustain a finding upon which no evidence has been introduced, is error sufficient to require a reversal of the judgment.

APPEAL from Denton.    Tried below before Hon. D. E. BARRETT.

*R. C. Foster* and *A. E. Wilkinson,* for appellant.—1. The court erred in refusing to give in charge to the jury the first instruction requested by defendant. [See the opinion.] Railway v. Culberson, 72 Texas, 375; Railway v. Lane, 79 Texas, 643; Stoneback v. Iron Co., 2 Cent. Rep., 604; Illick v. Railway, 35 N. W. Rep., 708.

2. The court erred in the first instruction of its charge given to the jury, in holding, that it was a rule of law applicable to the facts of this case that defendant must so construct its bridges that the employes of other companies using the same should be reasonably safe in so doing. See authorities above.

3. The court erred in refusing to give to the jury the second instruction requested by defendant.   [See the opinion.]   Railway v. Wallace, 76 Texas, 639; Railway v. Scott, 71 Texas, 709; Pilkinton v. Railway, 70 Texas, 229; Oil Co. v. Malin, 60 Texas, 650.

4. The court erred in giving to the jury the fifth instruction in its charge, by requiring the jury to find from the evidence that the rule of the employers of deceased was known to him or could have been known by the exercise of ordinary care, in order that his violation of such rule should defeat plaintiff's recovery, when the law presumed, in the absence of proof, that he was familiar with such rules, and it was his duty to know such rules, and there was no evidence that he was ignorant thereof, and there was clear and undisputed evidence of his knowledge of such rules, and the state of the proof did not warrant the leaving of the question of such knowledge to the jury.   Pilkington v. Railway, 70 Texas, 228; Railway v. Hester, 72 Texas, 40; Railway v. Wallace, 76 Texas, 639.

5. The court erred in refusing to give the third and fifth instructions requested by the defendant.   [See the opinion.]   Railway v. Crowder, 63 Texas, 503; Murray v. Railway, 73 Texas, 4; Railway v. Wallace, 76 Texas, 639; Railway v. Somers, 71 Texas, 700; Railway v. McCarthy, 64 Texas, 636; Railway v. Robinson, 1 Texas Law Rev., 238; Railway v. Williams, 72 Texas, 59; Derby's Admr. v. Railway, 4 S. W. Rep., 303.

6. The court erred in the third instruction of its charge to the jury in submitting to them as a question of fact, whether deceased could have known of the location of the bridge, when the evidence showed that he did know of its location, and there was no evidence tending to show that he was ignorant of its location, and the evidence showed that he could by ordinary care have known of its location.   Railway v. Faber, 63 Texas, 344; Altgelt v. Brister, 57 Texas, 432; Railway v. Platzer, 73 Texas, 124; Cook v. Dennis, 61 Texas, 246; Railway v. Greenlee, 62 Texas, 344; Franklin v. Smith, 1 U. C., 29; Cox v. Harvey, 1 U. C., 268.

*Alvin C. Owsley* and *S. M. Bradley*, for appellee.—1. The court did not err in refusing to give in charge to the jury the first instruction requested by defendant.   Railway v. Oram, 49 Texas, 345; Railway v. Lane, 79 Texas, 645; Bonner and Eddy v. La None, 80 Texas, 117; Beach on Con. Neg., 364; Railway v. Wright, 33 Am. and Eng. Railway Cases, 372; Railway v. Rowan, 23 Am. and Eng. Railway Cases, 390; Clark v. Railway, 28 Minn., 128; 9 N. W. Rep., 581.

2. It was the duty of the defendant to so construct and maintain its bridges that the servants and employes of the receivers of the Missouri, Kansas & Texas Railway Company using its track would be reasonably safe in passing through the same in performance of their duty in a proper manner.   Railway v. Lane, 79 Texas, 643.

3. The third and fifth instructions of the court, taken in connection with the balance of the charge, properly submitted the law of this

case.   Railway v. Oram, 49 Texas, 345; Railway v. Lane, 79 Texas, 645; Railway v. Rowan, 23 Am. and Eng. Railway Cases, 390–397; Railway v. Irvin, 37 Kan., 701; 33 Am. and Eng. Railway Cases, 382.

HEAD, ASSOCIATE JUSTICE.—Appellee in this suit seeks to recover damages claimed to have resulted to her from the death of James L. Moore, alleged to have been caused by the negligence of appellant, on the 4th day of May, 1891.

At the time of his death Moore was in the employ of the receivers of the Missouri, Kansas & Texas Railway Company as brakeman on a freight train running from Whitesboro to Fort Worth.   In this train was a furniture car, which was higher than ordinary freight cars. This class of cars is manufactured for hauling that particular kind of freight, and had been in use over the different railroads of the country, including that of appellant, for several years previous to the date above given.   It does not appear, however, that appellant itself owned any cars of this class, but for the time above named it had been accustomed to hauling them over its road when tendered to it by other companies.

Appellant owned the track from Whitesboro to Fort Worth, but at the time aforesaid it was being used jointly by it and the receivers of the Missouri, Kansas & Texas Railway Company for the operation of their respective trains, under an arrangement the nature of which is not disclosed by the record, further than that each party employed, paid, and controlled its own train crews.

The bridge across Denton Creek was constructed high enough to permit brakemen standing upon ordinary freight cars, and especially those owned by appellant, to pass through it in safety, but not high enough for them to pass without stooping while standing upon a furniture car of the class above described.   Both appellant and the receivers of the Missouri, Kansas & Texas Railway Company had in force a rule specially warning employes against standing upright upon cars while passing through bridges of the class of the one across Denton Creek.

On the date above named, Moore, while engaged in loosening the brakes upon his train in the performance of his duties, in passing through the bridge across Denton Creek, standing upon the furniture car referred to above, was struck by a cross-beam of the bridge and killed.

The evidence discloses, that this was the second time Moore had passed over this track in his capacity of brakeman, but does not disclose as to whether or not he was acquainted with the location or structure of this particular bridge, he being employed previous to this trip on that part of the track south of Fort Worth.

The only evidence as to whether or not Moore had knowledge of the rule of the company forbidding employes from passing through these bridges standing upright upon the cars, is the fact that, when he entered the employ of the receivers about one month previously, he

signed a statement to the effect that he had read their rules, and had his attention called particularly to certain bridges therein named on the southern part of the line, not including the one in question.

Verdict and judgment in favor of appellees for $11,000, from which this appeal is prosecuted.

*Opinion.*—Where the company that owns a railroad track gives to another company permission to run its cars over it, in the absence of evidence showing a legal arrangement varying the rule, the owner must be held to the exercise of ordinary care in the construction and maintenance of bridges along the track, for the protection of the servants of the leasing company as well as its own. The duty to provide a proper roadbed is one that the owner, by accepting its charter, assumes to all who enter thereon with its permission. Railway v. Lane, 79 Texas, 643.

The owning company is not, however, in the absence of a special agreement, liable to the servant of the using company for an injury caused by the negligence of the latter, or of its servants. Railway v. Culberson, 72 Texas, 375; Evans v. Railway, 18 S. W. Rep., 493.

The degree of care exacted of the owner in reference to its track would require that the bridges be so constructed as to permit the operation of ordinary cars through them in the usual way, and would not require that they be adapted to the passage of isolated cars of peculiar construction. By ordinary cars, however, it is not meant simply those that are in most common use, but it includes those that have come into such general use upon the different railroads of the country that their presence in trains passing over the track should be anticipated in the regular conduct of the business. The owning company should not be excused by simply adapting its bridges for the use of the particular cars owned by it, because it is a matter of general knowledge, as well as made apparent by this record, that railway trains are seldom, if ever, composed entirely of cars belonging to the operating company, but are principally made up of those received from connecting lines. It would therefore seem to follow that, as the trainmen are expected in the daily discharge of their duties to handle the cars of other companies, the owner of the road should use ordinary care to so construct it as to enable this to be done without unusual risk; and not only would its own employes, but also those of another company using the track with its permission, have the right to assume, in the absence of notice to the contrary, that this duty had been discharged.

If, then, Moore was killed while in the discharge of his duties in the ordinary way, through negligence on the part of appellant in the construction of one of its bridges, his representatives would be entitled to recover, unless he was himself guilty of negligence which proximately contributed in causing his death. But if appellant constructed its bridge of sufficient height to permit of the operation of ordinary cars, as above defined, through it in the usual way, and Moore was killed

by reason of his employers, the receivers of the Missouri, Kansas & Texas Railway Company, receiving into their train a car of peculiar construction and unusual height, and failing to give notice thereof to the brakemen, they, and not the appellant, would be liable therefor. This we understand to have been the view of the law entertained by the court below; and appellant's first, second, third, and fourth assignments of error, in so far as they conflict therewith, must be overruled.

The fifth paragraph of the court's charge was as follows: "If you find that it was one of the rules of the Missouri, Kansas & Texas Railway Company, or of the receivers thereof, that all persons were particularly cautioned against standing upright on the tops of covered cars while passing through truss bridges or tunnels, and that said rule was known to said James L. Moore, or could have been known to him by the exercise of ordinary care; and if you further find that said Moore knew of the location of the bridge mentioned in the petition, or could have known of it by the exercise of ordinary care, and if by his failure to observe said rule, when he knew, or by the exercise of ordinary care could have known, that said cars were passing, or were to pass, through said bridge, he contributed to his injury, or if his violation and disregard of said rule, if he did violate and disregard it, was the cause in whole or in part of his death, then you will find for the defendant."

And the second and fourth instructions requested by appellant, but refused by the court, were as follows:

"Fourth. It is in proof that deceased, James L. Moore, had been furnished with the rules and regulations of his employers, and that by one of said rules he was particularly cautioned against standing upright on covered cars while passing through truss bridges; and if you believe from the evidence that deceased, James L. Moore, violated such rule and disregarded defendant's precaution when passing through the bridge over Denton Creek, and that such violation and disregard of the rule was the cause, in whole or in part, of his death, then you should find for the defendant."

"Second. Deceased, J. L. Moore, being at the time of his death an employe of the receivers of the Missouri, Kansas & Texas Railway Company, it was his duty to comply with the rules of said company for his government in the discharge of his duties, and the rules of said employment, known to him, as shown by the undisputed evidence, prohibiting him from standing up on top of covered cars while passing through such bridges, neither said Moore, if he had lived, nor his relatives, by reason of his death, can recover for an injury received by him while violating such rule, which might have been avoided by complying with it."

It will thus be seen that before the jury, by the charge given them, would have been authorized to find in favor of appellant upon the ground that Moore's death was caused by his acting in violation of a rule of his employers, the evidence was required to show either that

he had actual notice of the rule, or by the exercise of ordinary care on his part would have had notice of it, thus in effect imposing the burden upon appellant to show affirmatively these facts. It will also be observed that, even though they may have believed that Moore had full notice of the location and construction of this bridge, the jury would not have been authorized to find in favor of appellant under this charge, unless they also believed from the evidence that he had notice, or by the exercise of ordinary care on his part would have had notice, of the rule he was charged with violating. Appellant's entire defense under this rule was, therefore, by the giving of this charge, and by the refusal of those requested by it, taken from the consideration of the jury, unless accompanied with evidence of knowledge thereof by Moore.

It may be conceded that this is a correct statement of the law in cases to which under the evidence it is applicable; but in this case the material question is, upon whom rested the burden of proof, and was there or not any evidence in the record to authorize the submission to the jury of the issue as to whether Moore would, or not, have had knowledge of the rule referred to, had he exercised ordinary care on his part.

Upon this subject, in Railway v. Callbreath, 66 Texas, 528, it is said: "As a general rule, it is not the duty of the employer to instruct him (the servant) as to the rules of the service, or warn him of the dangers incident thereto, unless information be asked." Also, in Watson v. Railway, 58 Texas, 438, this language is used: "If, as claimed, it was the usage or custom of the company, * * * then any person accepting employment to assist in operating trains upon the company's line would do so subject to such usage or custom, unless it should be made to appear that the company had concealed the existence of such usage or custom from the employe. The burden is upon the company to establish the existence of such usage or custom; but when it is established, if the employe seeks to avoid its force and effect, the burden is upon him to show that its existence has been concealed from him by the company." So, in Pilkinton v. Railway, 70 Texas, 229, it is said: "In accepting employment as brakeman, the deceased assumed that he possessed the necessary qualifications and was competent to perform all service incident to such employment. He took the position subject to all risks pertaining to that service, and if he knew that the flying switch was prohibited by a rule of the company established for the safety of employes, and he received his injuries while acting in willful disobedience to such rule, and such act of disobedience was the proximate cause of his injuries, there could be no recovery in this action. Railway v. Ryon, 70 Texas, 56. The existence of the rule is alleged in the petition, but it is not alleged that deceased did not know of the rule. In the absence of proof to the contrary, it will be presumed that appellee notified deceased of the rules by which he was to be governed as its employe. Wood's Mast. and Serv., sec. 419." See also Railway

v. McMahon, 26 Southwestern Reporter, 159, where this question is discussed somewhat at length, and a number of other cases cited.

The undisputed evidence showed, that at the time of this accident, and for several years prior thereto, there had been in force a rule, both of the receivers of the Missouri, Kansas & Texas Railway Company, and of appellant, which provided as follows: "All persons are particularly cautioned against standing upright on top of covered cars while passing through truss bridges and tunnels." Also, that at the time of engaging service with the receivers of the Missouri, Kansas & Texas Railway Company, which was about one month preceding his death, Moore signed the following written statement: "Mr. J. J. Gavin, at Alvarado, has this day informed me of the duties connected with the employment I am about undertaking, namely, that of braking, and has explained to me that the performance of said duties will expose me to great danger, the risk of which I assume for myself, and that I must use proper and constant care to avoid injury to myself and others. I have been furnished with coupling stick and a copy of the time table, containing the printed rules and regulations of the railway, with which I am to make myself familiar, and govern myself thereby, and have also read over, in presence of Mr. Gavin, rules 97, 98, and 99 [one of which was the rule above copied], in said copy; and furthermore, I have been informed by the said Mr. Gavin that the following bridges and tunnels will not clear the heads of men standing on top of any covered cars: Bridge number 636, South Chambers, two miles north Grandview; bridge number 724, Little River, two miles south Little River; bridge number 744, Miller's Creek, one mile south Granger; bridge number 746, San Gabriel, one and one-half miles north Circleville; bridge number 1398, Leon River, three miles north Belton; bridge 1985, Bushy Creek, one mile north Coupland; bridge 2037, Piney Creek, one mile north Bastrop. [Signed] Jas. L. Moore."

There is no evidence in the record tending in the slightest degree to contradict Moore's statement that he had in fact read this rule, much less tending to show that he had been prevented from doing so by any act of concealment on the part of his employers, or of appellant. We therefore conclude that the decisions above referred to establish the law to be in this State, that where the evidence shows an injury to a servant to have occurred through the violation of an established rule of the master, the burden is upon the servant to show that he had no actual knowledge of the rule, and that its existence had been so concealed or defectively published that he could not, by the exercise of ordinary care on his part, have acquired such knowledge. We also conclude, that the evidence as disclosed by this record was not sufficient to raise such an issue in this case, and that the court below should have, in its charge, assumed the existence of the rule, and that Moore was chargeable with the notice thereof, leaving the jury to decide the question of liability upon his knowledge, or want of knowledge, of the location and construction of the bridge.

That the giving of a charge submitting a material issue to the jury to sustain a finding upon which no evidence has been introduced is error sufficient to require a reversal of the judgment, has long been the settled practice in our Supreme Court. Railway v. French, 86 Texas, 96; Railway v. Platzer, 73 Texas, 117; Wooters v. Kaufman, 73 Texas, 395; Railway v. Blohn, 73 Texas, 637; Railway v. Tierney, 72 Texas, 312; Railway v. Faber, 63 Texas, 344; Railway v. Gilmore, 62 Texas, 391; Hampton v. Dean, 4 Texas, 455. This practice was also adopted in one of the earliest decisions rendered by this court. Sanger Bros. v. Henderson, 1 Texas Civ. App., 417.

In some of these cases, notably Railway v. French, supra, the question seems to have been raised, as it is here, by a charge instructing the jury as to what would constitute a defense, and not in presenting an affirmative ground of recovery.

In the case at bar, however, the error of the court does not end with the giving of the charge referred to, but it is emphasized by the refusal to give either of those requested by appellant, or one of its own more correctly presenting the issue, notwithstanding the existence and violation of this rule was one of the principal grounds of defense interposed.

We have based our decision upon the idea that a violation by Moore of a rule of his employers would constitute a defense to appellant as owner of the road. This seems to have been taken for granted in the presentation of the case here and in the court below; and with the unsatisfactory investigation we have been able to make of the question in the limited time allowed us, without the aid of briefs thereon, it is, we think, the correct view.

The court also instructed the jury as follows: "Every railroad company is required by law to draw over their roads the cars of every other company which may enter and connect with their railroad." This is in substance the law as it was contained in article 4251 of the Revised Statutes, but it seems that the word "cars" has been omitted from that article as it was revised by the Act of April 2, 1887 (2 Sayles' Civil Statutes, 4221), and there may now be some question as to the technical accuracy of the proposition contained in the court's charge; but as to this we do not decide, only calling attention to it in view of another trial.

The court also instructed the jury, that "if you find from the evidence that the bridge mentioned in plaintiff's petition was a truss bridge, and that the overhead beams or bars thereof were too low to permit a brakeman in the discharge of his duties standing on the top of such cars as were in frequent and ordinary use, to pass through such bridge without endangering his life," etc.

This charge is, we think, subject to the objection, that it assumes that a brakeman in the discharge of his duties would have the right to *stand* on top of the cars, while the rules herein before copied prohibit them from doing this in an upright position while passing through bridges of the kind referred to.

We do not think the court erred in submitting to the jury the question of Moore's knowledge or want of knowledge of the location and construction of this bridge. It seems to us that the evidence as presented by the record fairly raised this issue.

The other assignments of error need not be discussed.

The judgment of the court below is reversed, and the cause remanded.

*Reversed and remanded.*

Delivered October 3, 1894.

DISSENTING OPINION.

STEPHENS, ASSOCIATE JUSTICE.—From that part of the opinion which finds reversible error in giving the fifth paragraph of the charge, and in withholding the second and fourth instructions requested by appellant, I feel constrained to dissent.

The third paragraph of the charge submitted to the jury the state of case which would warrant a recovery in behalf of appellees, and required the jury, before returning a verdict in their favor, to find that appellant had been guilty of negligence in permitting the use of a defective and dangerous bridge on its road; that the deceased brakeman, James L. Moore, did not know, and could not by the use of reasonable diligence have known, of the condition and location of this bridge prior to the accident; and that, while in the discharge of his duty as brakeman, he received the fatal injury, without fault or negligence on his part; otherwise, to find for appellant. The seventh paragraph of the charge placed the burden of proof upon appellees to thus make out their case.

The answer of appellant, and not the petition of appellees, put in issue the existence of the rule which prohibited brakemen from standing upright on cars while passing through truss bridges; and also the fact that deceased not only was chargeable with knowledge of this rule, but that he had actual knowledge thereof. These facts were clearly established by the uncontroverted testimony offered in behalf of appellant.

In giving the charge complained of, the court but submitted the issues directly and positively made by the pleadings and evidence on the part of appellant; and while this charge might properly have assumed the existence of the rule, as well as deceased's knowledge thereof, I know of no statute or principle which requires a trial judge in this State to inform the jury that given facts are established by the evidence, but his duty ends with a plain statement of "the law arising on the facts." Rev. Stats., arts. 1316, 1317.

Expressions may be found in the opinions of our Supreme Court in several cases, beginning with that of Wintz v. Morrison, 17 Texas, 372, to the effect, that where there is no conflict in the evidence, and no room to doubt or hesitate as to a matter of fact in issue, the judge

in his charge ought not to assume that it is or may be doubtful.   I do not understand that this rule is violated when the judge instructs the jury that they may find a fact which the evidence clearly establishes, but only when the charge authorizes them to find the opposite of that which is so established.   In the former case he states the law arising on the facts; in the latter he does not.

An examination of the case of Wintz v. Morrison, supra, from which these expressions have been mainly taken, will disclose that the Supreme Court in that case had under consideration the action of the trial court in refusing special charges which requested the submission to the jury of a theory which was not only without evidence to support it, but was contrary to the undisputed testimony.   To further illustrate: if, in this case, the court had instructed the jury to find against appellant's defense, in case they should find that deceased was ignorant of the rule of the company, or by the use of reasonable diligence could not have acquired knowledge thereof, the principle above enunciated would have been disregarded; but in submitting the defense alleged, on the hypothesis of both the existence and knowledge of the rule as facts to be found by the jury, there was no assumption that such facts were or might be doubtful.

By observing this distinction it will be found, I think, that the several cases cited in the opinion dissented from, in support of the well-established rule, that it is error to submit in the charge an issue not raised by the evidence, are entirely in harmony with the view here expressed.   The charges condemned in these cases, including Railway v. French, and Sanger Bros. v. Henderson, of which special mention is made, stated the law arising upon a state of case, either as ground of recovery or defense, of which there was no proof, or, if proven, which had not been alleged.

While the law only requires the trial judge to submit controverted issues of fact, it does not follow that, because it is error to submit a theory at variance with the undisputed facts, it would be reversible error to submit a theory of the case in accordance therewith.   It may be conceded that there was no necessity for appellant to have alleged or proven the knowledge on the part of its brakeman of this rule of the company, nor that the court should have submitted this fact to the jury; but it does not follow that, because appellant unnecessarily alleged and proved the fact, and consequently that the court unnecessarily submitted it to the jury, it is ground for reversing the judgment.   When a defendant alleges and proves too much as grounds of defense, it seems to me that it does not lie in his mouth to complain that the court has followed his example and submitted too much to the jury, so long as the evidence places the superfluous fact beyond dispute, and the charge instructs the jury that they may find not against, but in accordance therewith.

I do not understand this fifth paragraph, when read in connection with the rest of the charge, and in the light of the evidence, as having

a tendency to impose any burden upon appellant which it did not assume in the defensive plea thus submitted; but as I read it, in submitting the existence of the rule, and of James L. Moore's knowledge thereof, the court was but following the facts alleged and clearly proven by appellant, leading up to the real issue intended to be submitted, to wit, whether, if Moore knew of the location of the bridge, or could have known of it by the exercise of ordinary care, his failure to observe the rule contributed to the injury. It seems to me that the jury must have understood this to be the controverted issue upon which they were called to pass.

The charges requested were objectionable, in that they required the jury to find in favor of appellant if the rule was violated by Moore while passing through the bridge in question, irrespective of whether he had knowledge, or was chargeable with knowledge, of the location of the bridge.

That portion of the charge which stated to the jury the requirement of article 4251 of the Revised Statutes, followed the construction placed upon it by the appellant's answer; and if the amendment of 1887 introduced a material change, appellant, perhaps, should not now be heard to complain of the error into which the court was thus led. But however this may be, I am of opinion that, under the facts of this case, the error was a harmless one.

The remaining paragraph quoted, and criticised as subject to the objection that it assumes that a brakeman in the discharge of his duties would have the right to stand on top of the cars, does not seem to me, especially when the context is considered, to merit that criticism. Besides, according to the uncontroverted testimony of the trainmen, this brakeman was in the discharge of his duties standing on top of the car at the time of the accident, and therefore the assumption, if made, was warranted. The rule of the company involved by it did not prohibit brakemen from standing, but only from standing *upright*, on top of the cars while passing through truss bridges and tunnels.

The only error that I find in the record which would require a reversal of the judgment, is the recovery of damages by the parents of deceased, which seems to me to be without evidence to support it; and if this should be remitted within a reasonable time, to be fixed by the court, I am of opinion that the judgment should be affirmed, though I entertain some doubt as to whether this case, as developed by the proof, properly comes within the rule laid down in the Lane case, 79 Texas, 343. I would also be better satisfied with such a result if the amount of recovery in behalf of the child of deceased had not been quite so large.

Delivered October 3, 1894.