## PULLMAN CO. v. CUSTER.

(Court of Civil Appeals of Texas. El Paso. Oct. 26, 1911. Rehearing Denied Nov. 15, 1911.)

1. CARRIERS (§ 412*)—PASSENGERS—EJECTION.

Plaintiff boarded a train through Pullman cars, placing his baggage in one of the vestibules, and entered the dining car, where he bought Pullman transportation. After leaving the diner and while standing in the vestibule of one of the Pullman cars his money was refunded and he was compelled to enter the day coaches. *Held* to show ejection from the Pullman cars though he was not actually therein.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1580; Dec. Dig. § 412.*]

2. CARRIERS (§ 410*)—PASSENGERS—WHEN RELATION ARISES.

The relation of carrier and passenger arises between the Pullman Company and the purchaser through sale of a Pullman car seat check.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 410.*]

3. CARRIERS (§ 412*) — PULLMAN COMPANY—DUTY TO PASSENGERS.

A sleeping car company's employés in ejecting a passenger must use no more force than is reasonably necessary and must act in a courteous and considerate manner, regardless of whether the company is to be deemed a common carrier in the ordinary sense of the term.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1580; Dec. Dig. § 412.*]

4. CARRIERS (§ 412*)—PULLMAN CARS—EJECTION OF PASSENGERS—GROUNDS.

Rolls of foreign blankets being taken home by a passenger to be used as portières do not constitute baggage which he may take with him into a Pullman car, and upon his insisting on doing so the Pullman Company is entitled to terminate the relation of carrier and passenger and eject him from the car.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1580; Dec. Dig. § 412.*]

5. CARRIERS (§ 412*)—PASSENGERS—EJECTION.

A railway passenger can remove the ground for ejecting him from a Pullman car constituted

---

by his attempt to take improper baggage into the car, by checking or otherwise disposing of the baggage, and is entitled to reasonable opportunity to make such disposition; but the carrier need not take the initiative by tendering opportunity to check.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1580; Dec. Dig. § 412.*]

6. CARRIERS (§ 412*)—PULLMAN CAR PASSENGERS—EJECTION—GROUNDS.

As affecting a sleeping car company's right to eject a passenger who attempted to take improper articles into the car with him, he cannot excuse the failure to request an opportunity to check the articles by any impropriety in the conductor's manner.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1580; Dec. Dig. § 412.*]

7. CARRIERS (§ 416*)—PULLMAN CAR PASSENGERS—EJECTION — ACTION — PLEADING AND PROOF.

In a suit for ejecting plaintiff from a Pullman car based upon lack of opportunity to check objectionable baggage, which plaintiff was not allowed to take into the car with him, plaintiff cannot recover upon the theory of improper conduct of the conductor.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1590–1600; Dec. Dig. § 416.*]

8. TRIAL (§ 243*) — INCONSISTENT INSTRUCTIONS.

In an action for ejecting from a Pullman car a passenger who insisted on taking a roll of blankets into the car, an instruction that the blankets would not constitute baggage, and another instruction leaving it to the jury to determine whether they were baggage, were improper as tending to mislead the jury.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 564, 565; Dec. Dig. § 243.*]

9. TRIAL (§ 204*) — SUBMISSION OF ISSUES — QUESTIONS FOR JURY—UNDISPUTED FACTS.

Trial courts should not submit as issuable undisputed facts.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 495, 497; Dec. Dig. § 204.*]

10. CARRIERS (§ 416*)—EJECTION OF PASSENGER—INSTRUCTIONS — REFUSAL — IGNORING ISSUES.

In an action for ejecting from a Pullman car a passenger who attempted to take improper baggage into the car, an instruction which ignored his right to opportunity to check the baggage, and which was based on the theory that he must have shown himself to have been actually within the car instead of in the vestibule, was properly refused.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1590–1600; Dec. Dig. § 416.*]

11. TRIAL (§ 255*)—INSTRUCTIONS—REQUESTS —NECESSITY.

In a suit for refusing to carry a passenger in a Pullman car after he had purchased a seat check and while he was in the vestibule of the car, if the company desired to have specifically submitted the distinction between ejection and exclusion, it was bound to request a correct charge upon that issue; the question of ejectment or not having been submitted in the general charge.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 627–641; Dec. Dig. § 255.*]

12. DAMAGES (§ 49*) — MENTAL ANGUISH — RIGHT TO RECOVER FOR.

Recovery may be had for mental anguish without physical pain or injury.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 100; Dec. Dig. § 49.*]

13. EVIDENCE (§ 80*)—PRESUMPTIONS—LAWS OF OTHER STATES.

In the absence of a contrary showing, the law of a sister state on a given point is presumed to be the same as the law of the forum.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 101; Dec. Dig. § 80;* Common Law, Cent. Dig. §§ 14–16.]

14. CARRIERS (§ 416*)—PASSENGERS—EJECTION —DAMAGES—EXCESSIVENESS.

$900 is excessive recovery for ejection of a passenger from a Pullman car, where the acts complained of, at most, were merely humiliating.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1590–1600; Dec. Dig. § 416.*]

Appeal from El Paso County Court; Albert S. Eylar, Judge.

Action by W. A. Custer against the Pullman Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Burges & Burges and E. B. Elfers, for appellant. W. M. Peticolas and Brown & Terry, for appellee.

HIGGINS, J. Action by appellee for damages because of humiliation, mental anguish, and distress alleged to have been sustained by reason of an unlawful ejectment from a sleeping car owned and operated by appellant and attached to Southern Pacific train; appellee and two companions having boarded said train through the Pullmans at Benson, Ariz.

[1] The uncontradicted testimony, it is urged, fails to show an ejectment; but the testimony upon this phase of the case is sufficient to raise the issue. The fact that appellee was not actually within the car is immaterial. The testimony is sufficient to show that he and his companions boarded the train through the standard Pullmans, placing their baggage in one of the vestibules in charge of the porter; entered the dining car where they purchased Pullman transportation; and after leaving the diner and while standing in the vestibule of one of the standard Pullmans their money was refunded by Pullman conductor, tickets taken up, and plaintiff ejected from that portion of the train and compelled to enter the day coaches. This was sufficient to constitute an ejectment, and it is immaterial whether or not they were actually within the Pullmans; neither is it important in what coach their seat checks called for accommodations.

[2] In connection with a proper consideration of appellant's assignments of error, it is proper to say we think the relation of passenger and carrier arose between the parties by the sale to appellee and his friends of Pullman seat checks.

[3] The question of whether or not the Pullman Company is a common carrier of passengers, in the ordinary sense of the term, is wholly immaterial in so far as concerns the duty of its employés to treat

its passengers courteously and considerate-ly. This rule, applicable to common car-riers also, applies to the extent of requiring its employés, in ejecting a passenger from its cars for any valid reason, to use no more force than is reasonably necessary, and in a courteous and considerate manner.

[4] The testimony in this case shows the Pullman transportation was purchased in the dining car and at that time the defend-ant's conductor knew nothing about the ob-jectionable articles which appellee desired to take with him into the Pullman. This consisted of several rolls of Mexican blank-ets being taken home to be used as portières in the residences of the parties. Under the undisputed testimony regarding these blank-ets, we hold that they were not baggage, within the meaning of the law (Cyc. vol. 6, p. 666, and cases cited), and appellant had no right to carry same into the Pullman with him. This being true, it necessarily follows that the Pullman Company had the right, upon insistence by appellee of taking the blankets into the cars, to terminate the re-lation of passenger and carrier theretofore existing and which had arisen by the sale and purchase of the Pullman transportation in the dining car. Railway Co. v. Bullock, 60 N. J. Law, 24, 36 Atl. 773, 37 L. R. A. 417. While this is true, yet, as stated above, the right to terminate the contract and eject the party carried with it the corre-sponding duty to make the ejectment in a proper manner. Railway Co. v. Bullock, supra.

[5] In this connection, we think it also a correct proposition in such a case, where the relation of passenger and carrier has arisen, the right to eject is not an absolute one, but is subject to the right of the pas-senger to remove the objection urged to the continuance of the relation, and for that purpose he is entitled to, and should be allowed, a reasonable opportunity to check or otherwise dispose of his baggage. This right of the passenger, however, is not an absolute one either, for it would be useless to tender the opportunity to check unless the passenger would have availed himself thereof, and we think, too, that the oppor-tunity to check should be allowed only when a desire to do so is manifested by the passenger. In other words, the carrier, or Pullman Company, is strictly within its legal rights in insisting that articles not properly classed as baggage should be ex-cluded from its cars, and that the duty is incumbent upon the passenger to seek the opportunity of removing the objection urged to his carriage, rather than upon the car-rier to take the initiative and tender the opportunity to check, not knowing whether it will be accepted or not.

Recurring back to the proposition of de-fendant's legal right to exclude or eject: Appellant in this connection urges that, such

being the case, no cause of action can be pred-icated upon the improper manner in which its conductor may have exercised this right, citing Pullman Co. v. Bales (Sup.) 14 S. W. 855. This case does not appear to have been subsequently cited, but, conceding the principles there enunciated to be the law in this state, we think the case at bar to be readily distinguishable. In the Bales Case the duty performed was apparent, and, under the peculiar circumstances, an ab-solute one; whereas here, as we have seen, the right of ejectment was not absolute but conditional, the passenger having the right to remain in the car by bringing himself within the rule applicable to his continued right of passage.

[6] From what has been said, it follows that appellant's eleventh assignment of er-ror should be sustained. This assignment complains of the submission in the court's charge of whether "the plaintiff was ready, willing, and able to remove said blankets from the car and have them checked through as freight or express so as to retain his seat in said car"; the point being made that the testimony does not warrant the submission of this issue. The plaintiff testified that no opportunity to check was given and nothing was said about checking. He does not state he would have checked if an opportunity had been granted. His companion, Smith, states: "If he (conductor) had asked us as a gentleman to have our baggage checked we might have done so. * * * It is not a fact that we finally agreed to check the baggage." Waiving the question of whether or not it was incumbent on plaintiff to re-quest an opportunity to check or express the blankets, we think this testimony fails to evidence a willingness to do so. It was their duty to check, whether the conductor's man-ner was proper or not.

[7] Appellee, however, insists that, the re-lation of passenger and carrier existing, they have a cause of action based upon the im-proper conduct and language of the conduc-tor, irrespective of whether he was right-fully entitled to ride in the car and of the question of an opportunity, readiness, and willingness, to check. Railway Co. v. Hill, 103 S. W. 227; Railway Co. v. Kennedy, 9 Tex. Civ. App. 232, 29 S. W. 394; Railway Co. v. Kinnebrew, 7 Tex. Civ. App. 549, 27 S. W. 633; Railway Co. v. Tarkington, 27 Tex. Civ. App. 353, 66 S. W. 137. This, however, is not the question before us; the suit being based upon the lack of an oppor-tunity to check.

[8] In the second assignment appellant complains of paragraphs 6, 7, 8, and especial-ly 9 of the court's charge in submitting the issue of whether or not the Mexican blankets were baggage. Paragraphs 6 and 9 are as follows:

"(6) By the term 'baggage' is meant what-ever is necessary for the personal use and

convenience of a passenger while traveling, such as wearing apparel, necessaries, such money as is reasonably necessary for the trip, etc. You are instructed that blankets purchased for sale or to be taken home for the purpose of ornament would not be baggage."

"(9) You are instructed that even if you should believe from the evidence that said blankets were not baggage, and that defendant company was prohibited from carrying them, or should you believe from the evidence that they made a bundle so large and cumbersome that it would be a violation of said rule of said Pullman Company to carry them, yet if you further believe from the evidence that the plaintiff was ready, able, and willing to remove said blankets from said car and have them checked through as freight or express so as to retain his seat on said car, and if you further believe from the evidence that the conductor on said sleeping car ejected him therefrom without giving him a reasonable time or opportunity to do so, then, in the event you so believe, you shall not find a verdict for defendant on these issues, but shall find for plaintiff, so far as these two issues are concerned."

It is true, if properly applied, the instruction contained in paragraph 6 would compel the jury to find the blankets were not baggage, because it was admitted they were being taken home for use as portières, but in the ninth paragraph it was submitted to them as a questionable matter, along with the question of whether the bundles were bulky and cumbersome. Upon this latter question they might have found either way, and the jury may well have believed it was a questionable fact whether or not the blankets were baggage and were at liberty to find either way. Certainly we think it calculated to have confused and perhaps misled the jury. Denham v. Lumber Co., 73 Tex. 78, 11 S. W. 151; Tel. Co. v. Burgess, 60 S. W. 1024, and cases cited; Railway Co. v. Moore, 8 Tex. Civ. App. 289, 27 S. W. 962; Wintz v. Morrison, 17 Tex. 387, 67 Am. Dec. 658. The cases cited by appellee upon this question we do not deem to be in point. In this connection it is proper to say we do not think it would be reversible error in all cases to submit as issuable a fact which is not disputed. The charge must be construed as a whole, and in many instances it would be apparent that the jury could not have been confused or misled.

[9] Trial courts, however, for reasons well stated in Wintz v. Morrison, supra, should not submit as issuable facts which are undisputed and not in controversy.

[10] The second special instruction was properly refused. It ignored opportunity to check and was based upon theory that plaintiff must have shown himself to have been actually within the car instead of upon vestibule.

[11] Neither was it sufficient to require the court to charge upon the exclusion phase of the case. If defendant desired to have specially submitted the distinction between ejectment and exclusion, it must have requested a correct charge upon that issue; the question of ejectment vel non having been submitted in the general charge. Railway Co. v. Shieder, 88 Tex. 152, 30 S. W. 902, 28 L. R. A. 538; Railway Co. v. Mangham, 29 Tex. Civ. App. 486, 69 S. W. 80.

[12, 13] We overrule the seventh assignment of error. A recovery for mental anguish under the laws of Arizona may be had without physical pain and injuries, as was shown by testimony of experts. Such, too, is the settled law in our state (Railway Co. v. Jones, 39 S. W. 124; Leach v. Leach, 11 Tex. Civ. App. 699, 33 S. W. 703), and in the absence of a contrary showing the law in Arizona will be presumed to be the same.

[14] The verdict was for $900, and such an amount is urged to be grossly excessive. Counsel for appellee practically admit it is excessive. In view of a reversal of the case, we find it unnecessary to pass directly upon this question; but we deem it not improper to say that the verdict in our opinion, too, is excessive. The acts complained of, at most, were merely humiliating, and we think the amount of the verdict very gravely suggests that it may have been prompted by passion and prejudice.

What we have said disposes of all material questions raised by the appeal. Those not passed on are such as would not likely arise upon another trial.

Reversed and remanded.

PETICOLAS, C. J., disqualified and not sitting.