## JOHN R. WINTZ v. WESLEY MORRISON.

Every misrepresentation, with regard to any thing which is a material inducement to a sale, which is made to deceive, and which actually does deceive the vendee, vitiates the contract of sale.

So also every concealment of defects by artifice, and for the purpose of deceiving the buyer, is a fraud which vitiates the sale.

Where the Court instructed the jury that, if the seller of a herd of horses knows that they are infected with a contagious and malignant disease, and suppresses the information, and the buyer could not, before making the purchase, by such an examination as a careful man would make, discover the disease, the buyer is entitled to a rescission of the contract and to recover his

Wintz  v.  Morrison.

· damages, it was held that there was no error of which the seller could com·
·plain.  It was not disputed that the buyer thought the horses were sound,
and paid a sound price.

Where one sells a herd of horses which he knows to be infected with a malig-
nant, contagious disease, and conceals the disease from the buyer, who buys
in ignorance of the disease, and for a sound price, the buyer may claim a res-
cission of the contract, and the measure of damages would be the money paid,
with interest, and the value of the care, attention and expense of the buyer, in
preserving the herd ; or, without demanding a rescission of the contract, the
buyer may claim damages equivalent to the value of such as have died, and
the difference between the present value of the living and the price paid for
them, with interest on said sums from the date of sale ; and also the value of
the care, attention and expense of the buyer, in preserving the herd.

Where one sells a herd of horses, or the like, which he knows to be infected
with a contagious disease, and conceals the disease from the buyer, who buys
in ignorance of the disease and for a sound price, the buyer in estimating his
damages is not confined to the value of such as are proved to have been ac-
tually diseased at the time, but the disease is to be regarded as infecting the
whole herd, to the extent proved up to the time of the trial ; and it would
seem that the seller is further liable to pay the damages done to other animals
of the buyer, to which, without fault on the part of the latter, the disease is
imparted.

Where there is no conflict in the testimony, and no room to doubt or hesitate as
to a matter of fact in issue, the Judge in his charge, ought not to assume
that it is or may be doubtful.   Such a course is calculated either to confound
the jury, by causing them to doubt the justice of their own clear convictions ;
or to mislead, by inducing them to suppose they may find the fact either
way, when the evidence warrants but one conclusion, and to find contrari-
wise would be to find manifestly against the evidence.

The rule which forbids the Judge to charge upon the weight of evidence, does
not require or authorize him to assume as doubtful, that which is clear and
undisputable ; or to assume hypotheses at variance with the certain fact.
Where the evidence to a fact is positive and not disputed or questioned, it is
to be taken as an established fact ; and the charge of the Court should pro-
ceed upon that basis.  It is only where there may be doubt, that the jury are
required to weigh the evidence, and it is then only that the rule applies, that
the Court shall not charge upon the weight of evidence.

It would seem that where the seller has been guilty of fraud which vitiates the
sale, it is not necessary for the buyer to tender back the property, before
suing for a rescission of the sale.

Where the plaintiff sues to rescind a sale made to him by defendant, on the
ground of fraud, and prays that his notes given for the purchase money be
delivered up to be cancelled and for general relief, and the defendant states
in his answer that the notes have been assigned to a third person, and there

is no evidence to the point on the trial, the defendant cannot complain that the Court below took his allegation for true, and gave judgment in favor of the plaintiff, under the general prayer, for the corresponding amount in money.

Appeal from Guadalupe.    Tried below before the Hon. Thomas J. Devine.

Suit commenced Oct. 4th, 1854.    The petition alleged that plaintiff Morrison in June, 1854, purchased of Wintz two hundred and thirty Mexican horses, for which he gave one thousand dollars in cash, and his two notes for three thousand and twenty-five dollars and fifty cents, each, due at future days, to secure which he executed a mortgage on land and slaves ; that the price paid and agreed to be paid, constituted a full and ample consideration for said stock, had they at the time of the trade been perfectly sound ;  but that they were laboring under and suffering from an infectious or contagious disease of the most malignant character, a disease almost absolutely fatal in every instance where it becomes developed, called by some " glanders ;"  that it had been existing among the horses belonging to this identical drove, for twelve months or more anterior to said trade, and had regularly up to the time of said trade, killed off numbers of them ; that the drove had been reduced by this disease from three hundred or four hundred to two hundred and thirty, sold to plaintiff ; that since they came to the hands of the plaintiff, the disease has continued regularly its ravages, proving fatal in almost every instance, until their numbers are now reduced to about half their original number ; and is at the present time in existence among the stock, and will, as the petitioner believes, kill every one of them before it ceases, and probably spread the infection or contagion among the horses of his neighbors ;  that at the time of the purchase, Wintz was well knowing to the fact of the existence of said disease among said horses, and had had full knowledge of its existence among them for many months

anterior to the sale to plaintiff, and that he fraudulently and unfairly failed to communicate said facts to your petitioner, but concealed the same, and from his acts and declarations led petitioner to believe that he was purchasing sound property ; that the disease was not visible among them as far as the plaintiff could discover ; that plaintiff had separated the drove, and done every thing in his power to arrest the disease, but without avail ; that soon after the purchase Wintz left the State, leaving no agent to act for him, and that he is ready to return such of the stock as are living.

.The plaintiff averred special damages, and prayed an injunction ; that the contract be set aside, that Wintz repay the petitioner with interest the money already paid ; that the notes and mortgage be delivered up and cancelled, and that the plaintiff recover a thousand dollars for care and labor, and for general relief.

The defendant admitted the sale as alleged, but denied that said stock was diseased to the knowledge of the defendant ; defendant further denies that he misrepresented the condition of said stock in any way ; and defendant further says that he sold said stock in good faith to said plaintiff ; that it is not true that he failed to disclose any and all he knew relative to said stock, that would in any way concern said plaintiff in his said purchase. The answer commenced by denying every thing not afterwards admitted. The answer also alleged that the notes had been transferred to one Bean.

The evidence showed the purchase ; that the stock was sold as a choice lot, for a sound price ; that the defendant represented them sound, and when his attention was called to the bad appearance of some, and to one dead in the pen, said they had the distemper, but were getting over it ; that one hundred of them were bought on defendant's representation, without being seen by plaintiff ; that a few days after the sale, they began to die a few at a time ; that over a hundred had died ; that plaintiff had sold some lots, but they came back on his hands ;

that the plaintiff and those to whom he sold had tried to cure
them, but that the disease was incurable ; that it was called
white glanders and was contagious ; a witness for defendant
thought it was Spanish fever, or yellows, the symptoms being
similar ; that in September, 1854, plaintiff sent a letter to de-
fendant, at Lavaca, which he got, tendering him back the
stock, and demanding the return of the price, to which the de-
fendant replied verbally to the person who carried the letter,
that he would not take the stock back ; that the balance of the
stock was worth nothing ; that the expense, and care and
labor of plaintiff was worth from eight hundred to one thou-
sand dollars.    That the drove infected the horses of a neigh-
bor of . the plaintiff ; and there was evidence tending to prove
that the defendant knew the horses were infected with said
disease when he sold them, many of them having previously
died of it.    A fine horse which plaintiff had, caught the dis-
ease and died ; and a neighbor of the plaintiff testified that
he, witness, lost eight of his horses from the same disease,
which they contracted by herding with the horses bought by
plaintiff from the defendant.    The testimony stated the facts
up to the time of the trial.

The Court instructed the jury, that if A sell a drove of
horses to B, and at or immediately before the time of sale,
such drove of horses or any part of them be unsound, or have
among their number any animal with an infectious or conta-
gious disease ; if such unsoundness or catching disease could
be discovered by such an examination as a careful man would
make under like circumstances, then the buyer cannot recover.
damages for the unsoundness.

But if Wintz knew of the disease, and suppressed this in-
formation, and Morrison could not before making the purchase,
by such an examination as a careful man would make, ascer-
tain before purchasing that the animals were affected with an
infectious disease of a malignant character, then the plaintiff
is entitled to recover.

The rule of damages stated by the Court, was to give the plaintiff the cost price of all the dead animals and interest ; and also the difference in the value between the living animals and sound ones of the same quality, with interest. And if they found deceit, then they would find for time and labor.

The Court refused to instruct the jury that if the horses were affected with any disease open and apparent to the plaintiff by the use of the ordinary diligence, the defendant is not liable for damages.

And that the plaintiff is not responsible for any disease which may have been communicated to any other portion of the stock of horses, after sale to Morrison, by a horse diseased at the time of the sale.

And that the defendant is not responsible to plaintiff by reason of the loss or death of any part of the stock of horses, from disease contracted after the sale to Morrison.

And that the defendant is not liable in warranty, other than for those horses which died from a disease existing at the time of the sale unknown to the plaintiff, and known and concealed by the defendant.

And that if the jury believed, that the disease was not contagious, but epidemic and peculiar to the climate, the defendant is not responsible in damages.

The jury returned a verdict for the amount of the cost of one half of the stock supposed to have died, $3525 50. And for the other half, which they considered worthless, $3525 50. They also found interest on the cash and two notes, from 21st June, 1854. And they found damages for attention, $800. And they, further, agreed that Morrison be compelled to deliver to Wintz, the surviving stock, between that time and the 1st of August. The Court rendered a judgment for the amounts, and decreed that the contract be set aside, and that the remaining stock be turned over to Wintz, or his agent, within fifty days.

The defendant moved for a new trial ; and now assigns for error :

1st. That there was error in the instructions given in the general charge.

2nd. That there was error in refusing the 2nd, 3rd, 4th, 5th and 6th instructions, asked for the defendant.

3rd. That the Court erred in refusing the new trial, the verdict being contrary to law and evidence.

*Paschals & Stribling,* for appellant. The propositions to be determined are :

1st. Were there any such representations by the defendant, as showed such a fraud as amounted to a warranty ; or might not the remark that they only had the distemper, have been a mistake of judgment as to the character of the disease ? And should not the remark, and the fact that all the witnesses agree that the horses looked badly, have put the purchaser upon his guard ? And would not the law require that he should have used due diligence and ascertained for himself, whether the disease was anything more malignant than the distemper ?

2nd. Was not the Court in error in assuming, that if there was one or more horses afflicted with a contagious or infectious disease, which might be communicated to the remainder of the stock, and the defendant concealed the fact, then the vendor was liable for all the consequences growing out of such an infection ; even though those consequences extended over several months ?

The law in relation to warranty, as established in this Court and other Common Law Courts, is that the law does not imply a warranty of soundness. The purchaser buys at his own risk, unless the seller gives either an express warranty, or unless, from circumstance of the case, or the nature of the thing sold, the law implies a warranty ; or unless the seller be guilty of a fraudulent concealment or representation in respect to a

material inducement to the sale. (Story on Sales, Sec. 349 ; 2 Kent, 478, cited and approved by this Court in McKinney v. Fort, 10 Tex. R. 231.) The Chief Justice correctly adduces the rule which exonerates the defendant from all liability in this case :

"It may be laid down as a rule, condensed from the author-"ities, that if the defect in the article be equally open to both "parties ; if the means of information be equally accessible to "both ; if neither says or does anything tending to impose upon "the other, and if the one in possession of material facts, know-"ing the other to be ignorant of them, be under no special "obligation by confidence reposed, or otherwise, to communi-"cate them truly and fairly, then the disclosure of this superior "knowledge as to facts affecting the value of the commodity "is not requisite to the validity of the contract" (2 Kent's Com. 482, 484, 490 ; Story on Sales, Chap. 12.)

Had the jury been instructed in the terms of this law, the verdict must have been different. The whole evidence shows that there had been very little disease among the animals, while they belonged to Wintz. They looked badly when sold ; the witnesses observed it, and in the presence of both remarked it, and Wintz gave it as opinion that the disease was distemper. And no representation of soundness, which only amounts to mere opinion, will be construed into a warranty of soundness, unless the representations were false and fraudulent, and intended to deceive ; and the representations must have been of such a character as to throw the purchaser off of his guard, or to mislead him. The same authorities already cited, establish this principle, and it is fully discussed in Taymon v. Mitchell, (1 Md. Ch. Decis. 496.)

The second proposition of the Judge, as contained in the instructions given and refused, to the effect that if any of the horses had at the time of sale, an infectious or contagious disease, which was afterwards communicated to other portions of the stock, the defendant was responsible for their value, whether he warranted or not, or whether he knew of the dis-

ease or not, is erroneous. For, taking the whole instructions, given and refused, together, they amount to about this : if the defendant knew of the existence of a contagious disease, and concealed the fact, he is liable ; if he did not know of the disease, and sold, he is liable for the subsequent spread of the disease. And at all events, if one was diseased, and there were such representations as amounted to a warranty of that one, the warranty by relation attaches to those horses which subsequently contracted the disease, directly or indirectly, through the agency of that one.

But there is another proposition of still more importance, and that is : admitting some or one of the horses had the glanders ; and that the glanders was infectious, and that defendant warranted the soundness of the whole two hundred horses, or practiced such concealment as amounted to a fraud ; and that the disease was afterwards communicated to other horses, sound at the time of the sale ; and that, from one to another, through several months, it spread until half the stock died ; was the defendant liable, by relation, as for a warranty of those not unsound at the time of the sale?

The same question might arise upon the sale of a gang of negroes ; one of which, unknown or known to the plaintiff, had been exposed to the small pox ; or to the sale of a planta-tion of horses, stock, negroes and dogs ; and in one dog was the virus of hydrophobia, which afterwards grew rabid and caused the dog to bite some other animal, which in turn bit a negro or negroes, so as to cause great loss, would the vendor in such a case be liable for all the consequential damages ? It seems to us that upon general principles, he would not be re-sponsible for such remote consequences. Nor is the plaintiff, in this instance, responsible for the remote consequences which the instructions assumed. (Davis v. Traylor, 8 Ga. R. 169.)

I have not, thus far, been able to find any case precisely in point ; but all the analogies are upon our side. The case seems to be very analogous to the case of Miller v. Yarbo-

rough, 1 Rich. 48.   And see Far v. Gist, 1 Rich. 68, which
is the dirt eating case ; Williams v. Vance, Dudley's S. C. R.
97 ; 2 Supp. U. S. Dig. 97 ; Stewart v. Dougherty, 3 Dana, 479.)

The verdict of the jury was not warranted by the evidence,
and was so flagrantly unjust that this Court will hold that a
new trial ought to have been granted.   The contract had not
been terminated, and the jury had no right to terminate it in
the absence of evidence.

The decree of the Court was not warranted by the facts or
the verdict.   It in fact annuls the contract, and renders a judg-
ment for the purchase money, interest, and damages without
any evidence that the notes had been paid.   A decree which
annulled the contract would be a bar against the notes.   So
the defendant thereby gets $8,500 for the $1000 paid for the
horses.

*Waul & Wilson*, for appellee.   As to the *scienter*, see 2 Gra-
ham and Waterman on New Trials, 410, note ;   Hard. R. 50,
and note ; 1 Nev. and Mann. 197, Wood v. Vance ; Smith on
Contracts, 226, note.

As to misreprentation of seller, and affirmance of sound-
ness, see 1 Smith on Cont. 221 ; 4 Harring. 425 ; 4 Mon. 127.

A vendor is liable for a representation made on the sale of
a horse, which proves to be false, whether it were the effect of
fraud or mistake.   (Baldwin v. West, Hardin's R. 51, n.)   See
also 1 Story's Eq. Jur. Sec. 193 ;   2 Graham and Waterman
on New Trials, 410, n., and the cases there cited.

Measure of damages in suits for deceit same as in suits for
breach of warranty.   (11 Met. R. 356 ;  21 Ver. R. ; 6 Washb.
580.)

A seller who does not disclose to the purchaser a latent de-
fect in the article sold, which is known to the seller, is liable
to an action of deceit, although he expressly refused to war-
rant the soundness of the article.   (Hough v. Waus, 4 Mc-
Cord, 159.)

Wintz v. Morrison.

Where an agent is authorized to sell a flock of sheep, and sells a portion of the flock with knowledge that the sheep are diseased, without communicating the fact to the purchaser, the owner of the sheep, although ignorant of the fraud, is liable to the purchaser for the damages sustained by him, though exceeding the value of the sheep sold. (Jeffrey v. Bigelow, 13 Wend. 508.)

*J. Ireland*, also, for appellee. There can be no pretence that the verdict was not warranted by the evidence. On the question of fraud, see Daggett v. Emerson, 3 Sto. R. 372.

WHEELER, J. The assignment of error questions the accuracy of the charge of the Court, the propriety of refusing instructions asked by the defendant, and the sufficiency of the evidence to warrant the verdict.

In examining the charge of the Court, and the instructions refused, regard must be had to their relevancy and pertinency to the issues and proofs. The action was for fraud and deceit practiced in the sale ; and was well brought on the special facts and circumstances relied on as creating the defendant's liability. It was (as all our actions, in general, are) a special action on the plaintiff's case. The petition sets forth the sale of the property for its full, fair value ; its apparent soundness, but real unsoundness and the nature of it ; and the defendant's knowledge and fraudulent concealment and false representations. The answer put in issue the fact of the defendant's knowledge of the unsoundness, and his concealment and misrepresentations. Upon these issues the case was submitted to the jury ; the material averments of the petition were well supported by the proof ; and thereupon the Court instructed the jury, in substance, that if the drove of horses had among their number any animal with an infectious or contagious disease, which could be discovered by such an examination as a careful and prudent man would make under like circumstances,

the plaintiff could not recover damages occasioned by such disease. But if the lot of horses sold were so diseased at the time of the sale, and the defendant knew and suppressed the fact, and the plaintiff could not ascertain it before making the purchase, by such an examination as a careful man would make, the plaintiff was entitled to recover the damages he had sustained by reason of the unsoundness. In this, there clearly was no error of which the defendant can complain. It was in proof that he knew that the horses were diseased, and represented them as sound. He accounted for any suspicious appearances, by saying they had had the distemper and were getting well of it ; thus diverting the attention of the plaintiff, and lulling any suspicions, appearances might have excited ; inducing him to believe they were occasioned by a comparatively trivial disease, which all the witnesses agree that it was not, instead of the really malignant and fatal disorder which the proof shows it to have been. There can be no question that the evidence discloses a case of manifest fraud.

Nothing can be better settled than that fraud vitiates every contract, and may consist either in misrepresentation, or in concealment. Every misrepresentation, with regard to any thing which is a material inducement to a sale, which is made to deceive, and which actually does deceive the vendee, vitiates the contract of sale. So, also, every concealment of defects by artifice, and for the purpose of deceiving the buyer, is a fraud which vitiates the sale. " The inference of fraud is easily and almost inevitably drawn, where there is a suppression or concealment of material circumstances, and one of the contracting parties is knowingly suffered to deal under a delusion." (2 Kent, Com. 483 ; Story on Con., Sec. 840, 841, 842.) The inference is peculiarly cogent, and quite irresistible, where, as in this case, the vendor suppresses or conceals the fact that the animal sold is affected with a contagious and fatal disorder, which will not only occasion its loss, but is liable to be communicated to others and cause still further destruction and

loss. The suppression or concealment of such a fact in the sale, cannot be considered as anything less than a positive fraud ; and of a peculiarly aggravated character.

But there was not only fraudulent concealment in this case, but misrepresentation also ; fixing the character of the trans-action, on the part of the defendant, as fraudulent beyond a question. For there can be no question that such misrepre-sentions, in respect to that which was the inducement to the purchase, constituted a fraud upon the plaintiff. Where a party misrepresents a material fact, or produces a false impression by words or acts in order to mislead, or to obtain an undue advantage, it is a case of manifest fraud. (1 Story's Eq. Sec. 192, et seq. ; 2 Kent, Com. 484.) And in such a case, the ground of the action is the deceit practiced upon the buyer, to his injury.

It undoubtedly is true, as stated in the text of Judge Story, to which we are referred by the counsel for appellant, that " the first and general rule in relation to warranty in cases of " sale, is, that the purchaser buys at his own risk,— *caveat* " *emptor*,—unless the seller either give an express warranty ; " or unless the law imply a warranty from the circumstances of " the case, or the nature of the thing sold ; or, unless the seller " be guilty of a fraudulent representation or concealment in res-" pect to a material inducement to the sale." (Story on Sales, Sec. 345.) But here the rule *caveat emptor* does not apply ; for it is the very case which is given as an exception in the text, where the seller has been guilty of a fraudulent repre-sentation and concealment in respect to the material induce-ment to the sale.

It is not deemed necessary to examine the doctrine of war-ranty in cases of sale, but it may be observed in the words of the same learned author, that, " the tendency of all the modern " cases on warranty, is to enlarge the responsibility of the seller, " to construe every affirmation by him to be a warranty, and " frequently to imply a warranty on his part, from acts and cir-

" cumstances, wherever they were relied upon by the buyer.
" The maxim of *caveat emptor* seems gradually to be restricted
" in its operation, and limited in its dominion, and beset with
" the circumvallations of the modern doctrine of implied war-
" ranty, until it can no longer claim the empire over the law of
" sales, and is but a shadow of itself. Of course, if there be
" any fraud, or gross mistake in the case, the contract of sale
" would be thereby completely annulled." (Id. Sec. 359.)
" Gradually the old Common Law rule of *caveat emptor* has
" been losing ground, and the law has been tending towards
" the doctrine of the Roman law, which is its antipode,—
" *caveat venditor*,—until it now occupies a middle ground be-
" tween the two, by requiring the strictest good faith on the
" part of the seller in all that he says and does, and throwing
" on the buyer the responsibility for any foolish mistakes, or
" wrong conclusions, which may result from his trusting to his
" own judgment." (Id. Sec. 365.)

In respect to the measure of damages, the Court adopted
the general rule in actions by the vendee for the breach of
warranty ; that is, the difference between the price paid and
the worth of the article at the time of delivery with its defects
and vices. But if the vendee has sustained other additional
injury, which is either the immediate consequence of the failure
of the vendor to perform his contract, or a material incident
thereto, he may recover such damages. (Story on Sales, Sec.
453.) The plaintiff, however, was only allowed the benefit of
the latter proposition, as to consequential damages, to cover
the expense of taking care of the horses. The recovery was
restricted by the charge, and was in fact confined to the actual
loss which the plaintiff had sustained in the horses sold him ·
and compensation for the necessary care and attention be-
stowed upon them ; and though there was evidence of other
damage, it was not allowed.

In the case of Jeffrey v. Bigelow, (13 Wend. R. 518,) which
was a case similar to the present, and is in point, the Supreme

Court of New York did not thus restrict the plaintiff in his right to recover consequential damages. The plaintiff had purchased of the defendants a flock of sheep, which were diseased. The disease proved to be contagious, and was communicated to other sheep of the plaintiff, which he before owned; and it was held that his claim for damages was not limited to the loss of the sheep purchased, but extended to the other sheep to which the distemper was communicated. The Court said " the plaintiff is entitled to such damages as necessarily " and naturally flow from the act of the defendants. The dam " age is not the mere difference between a diseased sheep and " a healthy one, but the damage sustained by communicating " the disease to the plaintiff's flock. * * If a person sells " me a cow which he knows to be affected with a contagious dis- " temper, and conceals this disease from me, such concealment " is a fraud on his part, which renders him responsible for the " damages I suffer, not only in that particular cow, which is " the object of his original obligation, but also in my other " cattle to which the distemper is communicated; for it is a " fraud in the seller which occasions this damage. Evans' " Pothier, part 1, Ch. 2, Art. 3, p. 166." (Id. 523–4.) On the subject of the fraudulent concealment the Court held, that as the agent of the defendants had authority to sell and did sell, with a knowledge that the sheep were diseased, and did not communicate the fact to the purchaser, his principals, although they had no actual knowledge of the fraud, were nevertheless liable to respond in damages to the purchaser.

It is manifest that whatever error there was in the charge of the Court, was committed in favor of the defendant. He cannot complain of such error.

It is unnecessary to examine separately the several instructions refused. It will suffice to say that those not embraced substantially in the charge given, were either not correct in themselves, or were not warranted by the proof. As we have seen, it would not have been correct in point of law, to have

instructed the jury, as asked, that the defendant was not responsible in damages for the loss of any part of the drove, not actually diseased at the time of the sale ; or for loss occasioned by the communication of the disease to other portions of the drove ; the correct rule being that the plaintiff was entitled to such damages as necessarily, or naturally resulted from the act of the defendant. Nor would the Court have been warranted in giving instructions which assumed that the disease was open and apparent to the observation of the plaintiff. The proof was that a part of the stock was not seen by the plaintiff, but was taken on the defendant's representation ; and there was nothing in the evidence to warrant the supposition that by ordinary care the plaintiff might have been apprised of the character of the disease, if even that would exonerate the defendant in a case of fraud. (Story on Sales, Sec. 354, et seq.) Nor would the Court have been warranted in giving the charge which assumed that the disease was not, or may not have been contagious ; since, from the evidence, there could be no doubt that it was so. Where there is no conflict in the testimony, and no room to doubt or hesitate as to a matter of fact in issue, the Judge, in his charge, ought not to assume that it is or may be doubtful. Such a course is calculated either to confound the jury, by causing them to doubt the justice of their own clear convictions ; or to mislead by inducing them to suppose they may find the fact either way, when the evidence warrants but one conclusion, and to find contrawise would be to find manifestly against the evidence. The rule, which forbids the Judge to charge upon the weight of evidence, does not require or authorize him to assume as doubtful, that which is clear and indisputable ; or to assume hypotheses at variance with the certain fact. Where the evidence to a fact is positive and not disputed or questioned, it is to be taken as an established fact ; and the charge of the Court should proceed upon that basis. It is only where there may be doubt, that the jury are required to weigh the evidence, and

it is then only that the rule applies, that the Court shall not charge upon the weight of evidence. It is not the meaning of the rule that the Judge shall ignore the indisputable facts of the case, or distrust the evidence of his senses ; or that he shall assume that the jury may doubt where there is no room for doubt ; or find contrary to the evidence and manifest truth and justice of the case.

It is unnecessary to review the evidence on which the verdict was found. The question of fact, as to the character of the disease, the knowledge, concealment and misrepresentations of the defendant, the fraud practiced, the value of the property, and the damages actually sustained, were questions for the jury, on which they have passed ; and their verdict is well supported by the evidence.

It is objected that there was no tender of the horses to the defendant at his place of residence. Such tender was not necessary to entitle the plaintiff to recover his damages ; nor was it necessary to entitle him to a rescision of the contract that he should have offered to restore the property, it having been proved and found by the jury to be utterly worthless. But if such offer was necessary, it was made ; the defendant did not object to the manner of it, but positively refused to take back the property. More could not be required of the plaintiff.

The assignment of errors does not question the correctness of the judgment ; and the appellant has nothing to complain of in the manner of its rendition. The petition prayed the delivery up and cancellation of the notes given the defendant for a part of the price of the purchase. But the answer of the defendant disclosed that he had already assigned and transferred the notes to a third person. They were transferred out of the power of the party and the Court. The Court could not act upon them. The only alternative relief which the Court could award was granted, and rightly under the prayer for general relief. We are of opinion that there is no error in the judgment and it is affirmed. Judgment affirmed.