## ALEXANDER et al. v. WALKER.*
(No. 6672.)

(Court of Civil Appeals of Texas. San Antonio. Feb. 8, 1922. Rehearing Denied March 22, 1922.)

1. Appeal and error ⬅︎1175(3)—Judgment for plaintiff in suit to rescind must be reversed where proper remedy was suit for damages.

If the proper remedy for fraudulent representations inducing the execution of a contract is a suit for damages with affirmance of the contract, a judgment for plaintiff in a suit to rescind the contract must be reversed without further proceeding.

2. Sales ⬅︎123—Buyer, unable to restore status, cannot rescind.

A buyer, who has placed himself or the property sold in such position as to be unable to restore the status, cannot rescind.

3. Sales ⬅︎134—On seller's refusal to accept tender back, buyer may sell goods for seller's account.

Where the seller refuses to receive back the goods sold, the buyer may sell the goods for the seller's account for the best price obtainable, and retain enough of the proceeds to reimburse him for necessary expenses, holding the balance subject to the seller's demand.

4. Trial ⬅︎295(10) — Charge held not on weight of evidence or misleading.

In a suit to rescind a sale of diseased cattle a portion of a charge to find for plaintiff if defendants, when they represented that the cattle were free from disease, if they did so, knew it was not true, *held* not on the weight of the evidence, or misleading in connection with the whole charge.

5. Appeal and error ⬅︎1001(1)—Verdict supported by evidence upheld.

Where the verdict is supported by evidence, the judgment will be affirmed, in the absence of prejudicial error, as provided in rule 62a (149 S. W. x).

6. Sales ⬅︎391½, New, vol. 14A Key-No. Series—One fraudulently induced to purchase diseased cattle has lien for purchase price.

One induced to purchase diseased cattle by fraudulent representations has a lien on the cattle for the purchase price.

7. Sales ⬅︎41—Caveat emptor inapplicable to sale induced by reliance on fraudulent representations.

The doctrine of caveat emptor is inapplicable to a purchase of diseased cattle in reliance on fraudulent representations of the seller, of whom the strictest good faith is required; the buyer being responsible only for foolish mistakes or wrong conclusions resulting from trusting to his own judgment.

8. Cancellation of instruments ⬅︎24(1) — Where seller is guilty of fraud, buyer need not tender back property before suing to rescind.

Where the seller is guilty of fraud, the buyer need not tender back the property before suing to rescind the contract.

9. Judgment ⬅︎252(5) — Appropriate relief may be granted under prayer for general relief.

Courts may grant appropriate relief under a prayer for general relief.

10. Sales ⬅︎130(4)—On seller's refusal to accept tender back, buyer may recover expenses and value of services in caring for property.

Where sellers of diseased cattle fraudulently represented as sound refused to receive them

**11. Sales ☞130(3½)—Value of services in caring for diseased cattle after seller's refusal to accept buyer's tender held for jury.**

The benefit or value of services rendered by a buyer in caring for diseased cattle after the seller's refusal to accept a tender back *held* for the jury.

**12. Sales ☞130(4)—Amount recoverable on rescission stated.**

In a suit to rescind a sale of diseased cattle fraudulently represented to be sound, a charge that plaintiff could recover the amount paid for the cattle with interest, less the amount received by him on resale after defendant's refusal to receive them back, plus reasonable expenses for pasturing and caring for them and the value of his own time, with interest until such sale, *held* correct.

**13. Trial ☞352(4)—Failure to submit issues not authorized by evidence or pleadings not erroneous.**

It is not error to fail or refuse to submit issues not authorized by the evidence or pleadings.

**14. Sales ☞130(4)—Damages for fraudulent sale of herd of diseased cattle not limited to those showing signs of disease at time of sale.**

In a suit to rescind a sale of diseased cattle, fraudulently represented to be sound, the court properly refused to limit plaintiff's damages to animals which showed signs of disease at the time of the sale.

**15. Sales ☞38(2)—False representation need not have been made with knowledge of falsity or with reckless disregard of truth.**

To rescind a sale of diseased cattle for fraudulent representations as to their soundness and health, it is not necessary that defendants' statement was made with knowledge of its falsity or with reckless disregard for the truth; it being sufficient that the cattle were diseased when represented to be sound, and that plaintiff relied on such representation.

**16. Sales ☞38(7)—That buyer might have discovered falsity of statement is no defense.**

A seller cannot defend against a false statement made by way of inducement on the ground that the purchaser might have ascertained its falsity by inspection and inquiry.

**17. Appeal and error ☞1064(4)—Use of word warranty, instead of misrepresentation or fraud in special charge, held harmless.**

In a suit to rescind a sale of diseased cattle for fraudulent representations, a special charge that it was not necessary that the seller knew the cattle were unsound to make him liable on a warranty of soundness was harmless, despite the use of the word "warranty," instead of "misrepresentation" or "fraud"; a judgment for plaintiff being sustainable on the manifest fraud in fact independently of the supposed warranty.

**18. Sales ☞130(1)—Whether suit to rescind was in tort or on warranty held immaterial, where plaintiff's tender of property purchased was refused.**

Whether a suit to rescind a sale of diseased cattle on the ground of fraudulent representations and to recover the purchase price and expenses for caring for them on the seller's refusal to receive them back be an action in tort or on the warranty for the fraud inducing the sale is immaterial; the measure of damages being the same whether or not the sale was rescinded.

**19. Trial ☞260(1)—Refusal of charges embraced in charges given is harmless.**

Refusal of special charges fairly embraced in the court's general charge and special issues submitted at appellee's request was harmless.

**20. Damages ☞71—Attorney's fees recoverable only as exemplary damages or penalties for malicious act or willful fraud.**

Attorney's fees, which are not ordinarily recoverable in cases of tort growing out of breaches of contract or warranties, may be recovered as exemplary damages or penalties only where the wrong consists of a malicious act or the perpetration of a willful fraud.

Appeal from District Court, Webb County; J. F. Mullally, Judge.

Suit by J. O. Walker against B. M. Alexander and another. Judgment for plaintiff, and defendants appeal. Affirmed.

Hamilton & Phelps, of Laredo, and George M. Clifton and George G. Clifton, both of San Antonio, for appellants.

Hicks, Hicks, Dickson & Bobbitt, of San Antonio, and T. C. Mann, of Laredo, for appellee.

COBBS, J. Appellee filed this suit against appellants for the rescission of a sale of alleged diseased cattle amounting to 316 head, for which appellee paid the sum of $23,700, being induced to purchase the same upon the false and fraudulent representations that the cattle were sound and healthy at the time of sale, but in truth and in fact they were at the time of sale suffering from an infectious and contagious disease known as Texas or tick fever, which fact was well known to appellants at the time, but was not communicated to appellee, and, at the time of the purchase, appellee, relying upon the false representations so made to him, and believing the same to be true, that they were sound and healthy cattle, purchased and paid said sum of money in cash for them. That appellants intended to and did deceive the appellee, and induced him thereby to purchase said cattle, knowing such representations to be false and material, induced appellee to rely upon such representations in the purchase of said cattle.

That said purchase was made on or about

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

the 4th day of December, 1919, and on or about the 10th day of December, 1919, appellee discovered that a number of said cattle had died and others were sick and drooping. He secured the services of a veterinary surgeon to examine them, whereupon it was discovered they were not sound and healthy cattle, but were diseased and suffering from Texas or tick fever. Being so advised, appellee promptly notified appellants, rescinded the sale, and tendered to appellants the cattle so purchased, and demanded from them the return of the purchase money paid. The appellants refused to accept the return of the cattle, and refused to refund the purchase money. Upon the refusal to rescind the sale and receive the cattle and the refusal to return the purchase money so paid, appellee notified appellants that he would be compelled to and would handle said cattle for appellants' account and hold appellants liable for all damages and losses that might be sustained by reason of appellants' fraud and deceit in selling said cattle to him and refusing to take them back and refund the money paid for them.

Appellee alleged that 16 head of said cattle died from said disease and the remainder depreciating so in value on account of. said disease until they were not worth exceeding $70 per head, for which price he sold the live ones about March 25, 1920, and delivered the same to the purchaser about April 15, 1920, and that such price was a reasonable price.

Appellee prayed for a rescission of the contract; for the recovery of the purchase price of $23,700 paid appellants for said cattle, with interest from December 4, 1919, to date, less the sum of $18,482.17, the amount received by appellee for said cattle, less the cost and expense of pasturing, looking after the cattle from the date of the purchase until their sale, for which appellee received $20,-540.40 as the entire purchase price. The reasonable value of the expense of pasturing, labor, and caring for said cattle, including $750 to appellee for his time, was $2,023.23.

Appellee further prayed, because of appellants' willful fraud, he was required to bring this suit and to employ an attorney at law at an additional expense of $500 for which he also prayed judgment.

Appellants filed their answer, containing exceptions, general and special, and by proper answer denied, traversed, and responded to every allegation of appellee's pleading.

The court overruled all exceptions presented by appellants, which rulings were properly excepted to, and the objection preserved in the record. The case was tried with a jury upon a general charge of the court, but the court, in connection therewith, submitted one special instruction requested by appellee, and refused all special charges requested by appellants. A verdict was returned by the jury in favor of appellee for $6,120.56 against appellants, and for which amount the court entered its judgment in favor of appellee.

The first question raised and presented by appellants is that this suit was improperly brought and maintained, and that the court erred in not sustaining appellants' exception to the petition, for the reason the suit for the rescission of the contract was not the proper remedy for one who has bought cattle and paid for them, and disposed of said cattle, rendering it impossible for the parties to be· placed in statu quo, the proper remedy being a suit for damages with affirmance of the contract. This point is presented in various forms in a lengthy brief, as well as in a supplemental typewritten brief.

[1, 2] If appellants' contention be correct on the law, as contended for, then it would require a reversal of the judgment without proceeding further with this case. Undoubtedly, as a sound principle of equitable jurisprudence, no one would be permitted to retain the purchased property and at the same time sue to recover the full price paid. This would be unconscionable. The seller has the right to require the return of the sold property—the special property conveyed or its tender to him before he can be called upon to rescind. He has the right to see the property, if personal, and inspect for himself to the end that he may determine its present status or see there is no change, that he may decide what position he shall take in respect thereto. If the party seeking a rescission is acting fairly and honestly, it is then incumbent upon the seller to determine his course of action. Again, if the purchaser has placed himself or the property in such a position as not to be able to restore the status, he cannot secure a rescission, but his remedy is then entirely and alone upon the tort—an action for damages. This is clearly announced as the rule in that most excellent of books, where the whole subject is discussed, Black on Rescission and Cancellation, vol. 2, §§ 616–618, and many times approved by decisions in this and other jurisdictions.

[3] It is clear that appellee made an effort, offer, and unqualified tender of the cattle promptly to appellants as soon as he discovered they were diseased. When the tender and offer were thus made to restore and deliver the sold property to appellants, they unqualifiedly refused to receive the cattle, and rejected them, thus placing it beyond the power of appellee to compel appellants to receive the same. Nothing further being left for appellee to do in this effort of the "restitutio in integrum," so essential as the precedent steps for the rescission of the contract for suit for the recovery of the price paid for the property, he notified appellants that he would handle said cattle for appellants' account, and hold them liable for all

damages and losses he might sustain by reason of their fraud and deceit in selling to him the cattle. Mr. Black on Rescission and Cancellation of Contracts, vol. 2, § 623, further says in such cases:

"The person with the property thus left in his possession, on the other's refusal to receive it, in fact holds it in the character of a bailee, and he must use all reasonable care to make the other party's loss as light as possible, and must not willfully allow the property to deteriorate or be destroyed, although he has the right to do any acts in regard to the property reasonably necessary to protect his own interests, and at the same time maintain his claim to rescind. But he cannot keep the property for an indefinite time thereafter and recover from the other party the expense of so keeping it."

To the same effect is the law expressed in Williston on Sales, § 603.

When the seller refuses to receive the goods thus tendered, it is the duty of the purchaser to take such measures as are expedient to save unnecessary loss to the seller, "and if the best method to accomplish this end is to sell the goods (as in case of perishable goods) he may sell them for the best price obtainable and retain out of the proceeds enough to reimburse him for necessary expenses, and hold the balance subject to the vendor's demand." Black on Rescission and Cancellation, vol. 2, § 629.

When, after a proper tender of the property by the buyer, the seller refuses to accept it, the buyer has the right to handle and dispose of it as may be reasonably necessary to protect his interests and still maintain his rights to rescind. Jessop v. Ivory, 158 Pa. 71, 27 Atl. 840; Hitchcock v. Griffin, 99 Mich. 447, 58 N. W. 373, 41 Am. St. Rep. 624; Messmore v. N. Y. Shot Co., 40 N. Y. 422. But after all, as said by that distinguished jurist, Mr. Justice Wheeler, in Wintz v. Morrison, 17 Tex. 388, 67 Am. Dec. 658, a case not very different from this:

"It is objected that there was no tender of the horses to the defendant at his place of residence. Such tender was not necessary to entitle the plaintiff to recover his damages, nor was it necessary to entitle him to a rescission of the contract that he should have offered to restore the property, it having been proved and found by the jury to be utterly worthless. But if such offer was necessary, it was made; the defendant did not object to the manner of it, but positively refused to take back the property. More could not be required of the plaintiff."

We overrule all the assignments raising that issue, for the reasons stated, and likewise overrule all the assignments directed to the action of the court in passing upon the special exceptions directed at the petition or to any part thereof. The petition is good against both the general and special exceptions.

There are a number of propositions submitted, presented and urged in certain assignments, in a general way, to the charge of the court, but portions of which in some cases complained of are not always set forth, which renders it difficult to intelligently pass upon such propositions.

[4] The isolated portion of the charge of the court, complained of in the twenty-second assignment of error. "If you further believe from the evidence that, when defendants made such representation that the cattle were not suffering from disease (if they did make it), they knew it was not true," in connection with the whole charge, is not, as contended by appellants, on the weight of the evidence or calculated to mislead the jury, and the assignment is overruled.

In disposing of many assignments, without naming them, they being on questions of fact, we wish to say, as was said in Wintz v. Morrison, supra, all the matters "of the disease, the knowledge, concealment and misrepresentations of the defendant, the fraud practiced, the value of the property, and the damages actually sustained, were questions for the jury, on which they have passed, and their verdict is well supported by the evidence." As the issues in the two cases are so much alike, we adopt that language as appropos here.

[5] So, unless some error of law in the several rulings of the court appears to have, as provided in rule 62a (149 S. W. x) "amounted to such a denial of the rights of the appellant as was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment in the case, or was such as probably prevented the appellant from making a proper presentation of the case to the appellate court," the case should be affirmed. It may, however, be that rule 62a has been so much "more honored in its breach than in its observance" it has lost some of its vitality.

[6] Assignments are many times duplicated and reiterated, reasserting the contention first assigned that appellee could not claim a rescission, keep the cattle, and sue for damages, contending also that, when the property is not entirely worthless, the buyer should offer to restore it before rescission of the contract may be had, and that when the purchaser continues to deal with the property, or dispose of it to third parties, he places himself in a position not to be able to restore the status quo, and his suit must be for damages. All such contentions seem in defiance of the facts as developed on the trial and found by the jury in favor of appellee. The evidence shows a proper offer or tender of the cattle back to the seller, just as appellants contend the law to be. It shows appellants' refusal, which compelled the appellee to hold them in trust, or as bailee to sell them for reimbursement and upon which cattle he had, as shown by the foregoing recited authorities, a lien.

upon the cattle for the purchase price paid by him. Hough v. Fink (Tex. Civ. App.) 141 S. W. 148. After appellants refused to receive the cattle, appellee could not turn the cattle loose and sue for damages. He was compelled to keep them, care for them as a bailee, and do everything he reasonably could do with them, and dispose of them in a manner that would cause the least damages.

[7] The purchaser did not buy at his own risk, and the doctrine of caveat emptor does not apply. He relied upon statements of the seller, and the jury found that the seller represented that the cattle were sound, when in fact they were diseased cattle. Here, again, we believe the language used in Wintz v. Morrison, supra, is appropriate:

" 'The maxim of caveat emptor seems gradually to be restricted in its operation, and limited in its dominion, and beset with the circumvallations of the modern doctrine of implied warranty, until it can no longer claim the empire over the law of sales, and is but a shadow of itself. Of course, if there be any fraud, or gross mistake in the case, the contract of sale would be thereby completely annulled.' * * * 'Gradually the old common law rule of caveat emptor has been losing ground, and the law has been tending towards the doctrine of the Roman law, which is its antipode—caveat venditor—until it now occupies a middle ground between the two, by requiring the strictest good faith on the part of the seller in all that he says and does, and throwing on the buyer the responsibility for any foolish mistakes, or wrong conclusions, which may result from his trusting to his own judgment.' * * *

"In respect to the measure of damages, the court adopted the general rule in actions by the vendee for the breach of warranty; that is, the difference between the price paid and the worth of the article at the time of delivery with its defects and vices. But if the vendee has sustained other additional injury, which is either the immediate consequence of the failure of the vendor to perform his contract, or a material incident thereto, he may recover such damages. Story on Sales, § 453. The plaintiff, however, was only allowed the benefit of the latter proposition, as to consequential damages, to cover the expense of taking care of the horses. The recovery was restricted by the charge, and was in fact confined to the actual loss which the plaintiff had sustained in the horses sold him, and compensation for the necessary care and attention bestowed upon them; and though there was evidence of other damage, it was not allowed."

Further on in the same case, the court cites the case of Jeffrey v. Bigelow (13 Wend. 518), in which the Supreme Court of New York said:

"The plaintiff is entitled to such damages as necessarily and naturally flow from the act of the defendants. That damage is not the mere difference between a diseased sheep and a healthy one, but the damage sustained by communicating the disease to the plaintiff's flock. * * * If a person sells me a cow, which he knows to be affected with a contagious distemper, and conceals this disease from me, such concealment is a fraud on his part, which renders him responsible for the damage, and I suffer, not only in that particular cow, which is 'the object of his original obligation, but also in my other cattle, to which the distemper is communicated; for it is a fraud in the seller which occasions this damage."

It is held in Haldeman v. Chambers, 19 Tex. 50, that innocent misrepresentation entitled to rescission. It is held in McCord-Collins Commerce Co. v. Levi, 21 Tex. Civ. App. 111, 50 S. W. 607:

"It seems to be settled in this state that in actions of this character it is not necessary to aver or prove that the defendant knew, at the time he made the representations, that they were false. It is sufficient to allege and prove that they were untrue in fact, and that the plaintiff believed them, and relied thereon, and was induced thereby to make the purchase; and it would make no difference whether the party making them did not know at the time whether they were true or not. Mitchell v. Zimmerman, 4 Tex. 80; Wintz v. Morrison, 17 Tex. 383; Henderson v. Railroad Co., Id. 577; Culbertson v. Blanchard, 79 Tex. 492, 15 S. W. 700; Loper v. Robinson, 54 Tex. 514." Joy v. Bitzer, 77 Iowa, 73, 41 N. W. 577, 3 L. R. A. 184.

[8] See notes, 40 Am. Dec. 304; 36 Am. St. Rep. 831; 47 Am. St. Rep. 551.

[9] Where the seller is guilty of fraud the buyer need not tender back property before suing for rescission of contract. Note, 103 Am. St. Rep. 59. After all, courts may grant appropriate relief under prayer for general relief. Farrar v. Beeman, 63 Tex. 180; Grabenheimer v. Blum, 63 Tex. 373.

[10, 11] While it, as we have already said, was appellee's duty to care for the cattle after appellants refused to receive them back, appellee could not be required to bear the expense of such care or look after them in person for no compensation, and the court did not err in overruling the special exception directed at the item of $750 declared upon for special damages for special services. This expense was a necessary part of the damages, and as to the benefit or value of the services rendered was an issue for the jury. Appellants had the opportunity and right to receive the cattle and care for them, but because of their refusal to do so they could not require appellee to care for them without compensation. As we have seen in such cases, the damaged person is entitled to such damages as necessarily and naturally flow from the acts of the defendants, and the care of the cattle naturally followed as the result of the acts of appellants.

[12] We have carefully examined the charge of the court, and belive it submitted the issues fairly, and pronounced sound principles of law. On the measure of damages, he charged the jury:

"* * * If the buyer does not know that the cattle are unsound or suffering from disease, then the buyer has the right to rescind said sale and tender back the cattle, and recover the purchase price paid therefor, even though the seller made no representation as to the soundness of the cattle or their freedom from disease; and if the buyer in either event rescinds said sale and tenders back the cattle, he is entitled to recover of the seller the amount paid for said cattle, with interest thereon from the date of such payment until the return of said money, and if the seller refuses to take back said cattle, it then becomes the duty of the buyer to handle said cattle with ordinary care until they can be sold, and upon said sale, the seller will be entitled to the amount received for said cattle after deducting therefrom the reasonable value of the keep of said cattle between the date of said original purchase and their sale by the purchaser, including the reasonable value of pasturage and the wages of employés engaged in caring for the cattle, and also including the value of his own time, if any, spent in caring for said cattle."

And further on in his charge said:

"* * * And if you further believe from the evidence that the plaintiff did not know that the cattle were suffering from said disease at said time, and that on or about December 12, 1919, the plaintiff ascertained that fact, and thereupon so informed the defendants, and offered to deliver back said cattle to defendants, and demanded the return of his money paid therefor, and that defendants refused to rescind said sale and take back the cattle and return to plaintiff the purchase money he paid for them, and that plaintiff thereupon put said cattle upon pasturage, and looked after the same, and that on or about April 15th, 1920, sold said cattle (excepting any that had died), and that said sale by him was for the best price which plaintiff could secure for said cattle, and was a reasonable price for them in their condition at the time of said sale, and was a lower price than he paid defendant for them, and that plaintiff incurred expenses in caring for said cattle at the time they were in his possession, then you will return your verdict for plaintiff for the amount which he paid defendants for said cattle, with 6 per cent. interest thereon from the date of such payment to April 15, 1920, less the amount which plaintiff received for said cattle when he sold them, after deducting from the latter amount the reasonable expenses for pasturing, caring for, and looking after said cattle, and the value of his own time, if any, spent in looking after said cattle and caring for the same from the date of their delivery to plaintiff until said sale; and interest at 6 per cent. per annum on the balance so found by you from the 15th day of April, 1920, to this date."

We can find no fault with this charge, it is without error, and is a fair and correct submission of the issues to the jury for their direction and government.

It would have been error for the court, as urged, to have confined the jury to find, or limit them to find, damages only to animals which showed signs of the disease at the time of the sale. The disease might not have been apparent in the cattle at the time, and the jury found it was not, but it developed later, either killing some of them or depreciating their value.

[13, 14] There seems to be no evidence introduced to show what would have been the difference in the value of the cattle in their diseased condition, had they been handled with reasonable care, and their value after being handled as they were handled, nor any pleading to authorize such an issue, and it was not error in the court to fail or refuse to submit such issue. The theory of the appellee is that he purchased the cattle in one bunch upon the representations falsely made to him in respect to the health and soundness of the whole herd, and it was not incumbent upon him to make a separate examination of each animal to determine at that time whether there was a single one diseased or not.

This is a case in which the jury, under the evidence, were authorized to conclude, in the absence of any intervening cause, that in a little while after the sale a considerable number of the herd were suffering from Texas fever, which would not perhaps manifest itself then, though the cattle had the fever at the time of the sale.

[15] It would have been error for the court to have charged, as appellants requested, in effect, that in order for appellee to recover that appellants knew that the statement "was false, or made such statement with a reckless disregard of the truth." They may not have known at the time the cattle were sold that they had incipient Texas fever, but if they represented to appellee that they were sound cattle when they were diseased cattle, appellee, nevertheless, if he relied upon that statement as he said he did in making the purchase, had the right of rescission. Mitchell v. Zimmerman, 4 Tex. 75, 51 Am. Dec. 717; Henderson v. S. A., etc., Ry. Co., 17 Tex. 577, 67 Am. Dec. 675; Loper v. Robinson, 54 Tex. 514.

[16] We cannot give our assent to appellants' proposition, that no seller is bound to inform prospective purchaser of the disease in the cattle, known to seller, but may leave the purchaser to his own judgment to ascertain independently for himself. This kind of trading would mean that as quickly as a disease is discovered by buyer, which was known to the seller at the time of sale, and which killed the beast, the seller, being called upon to reimburse the victim, would laugh and say: "Yes; I put one over you. Now help yourself." Besides, such a charge was not applicable here under the facts.

When the false statement is made by way of inducement, even though by inspection and inquiry the purchaser might have ascertained the falsity, the seller cannot defend against his fraud by saying, You inspected for yourself and should have discovered my representation to be fraudulent. Schouler on

Sales, vol. 2, p. 604; Bank of Woodland v. Hiatt, 58 Cal. 234.

[17] There was no error in giving the special charge requested by appellee to the effect:

"It is not necessary for the vendor of cattle to know the same are unsound in order to make such vendor liable on a warranty of unsoundness."

This charge is rather carelessly expressed. We presume it was meant to say a warranty of soundness. This seems to be directed at appellants' contention that if they acted innocently they were not chargeable with fraud. We do not think any injury resulted from appellee's requested special charge in using the word "warranty" instead of "misrepresentation" or "fraud." The jury would perhaps not understand any technical distinction between the words, and hence the charge was harmless. The judgment could be sustained on the manifest fraud in fact independently of the supposed warranty. Hubby v. Stokes, 22 Tex. 221.

[18] Whether this suit be designated, technically, an action in tort, or on the warranty because of the alleged fraud perpetrated on the purchaser, because of appellants' misrepresentations that induced the sale, is not material. The cattle having been tendered back were refused, and thus, whether the sale was rescinded or not, the measure of damages would, as already shown, be the same.

[19] We have carefully considered all the assigned errors from 1 to 13, and especially the special charges requested by appellants and refused. Some of them might have been given, but when the general charge is scrutinized carefully, all requested issues refused have been fairly embraced in the excellent submission of the issues to the jury in the court's general charge and the special issue submitted at appellee's request, and the refusal of the court was harmless. We have already discussed in a general way the issues raised in the designated special charges requested of appellant and refused by the court. This is largely, or rather almost wholly, a fact case, predicated upon fraud, in which cases the jury are allowed a broad field for investigation, and as said questions, "on which they have passed, and their verdict, are well supported by the evidence," we will not disturb their findings.

[20] We find some difficulty in affirming that part of the judgment for attorney's fees. They are not ordinarily recoverable as a proper element of damages in cases of tort growing out of breaches of contract or warranties. The courts, however, have allowed such recoveries in the form of exemplary damages, or penalty in cases of willful fraud. It is true in this case the court properly submitted the issue to the jury, and they found in favor of appellee's contention. But is the evidence sufficient to support such finding? It is true that the evidence supports a finding of fraud and deceit, sufficient to predicate a rescission of the contract and permit recovery of damages resulting to appellee therefrom, but does it show such element of willful fraud and deceit practiced as to warrant the allowance of attorney's fees as punishment? In support of appellee's contention he only cites Hubby v. Stokes, 22 Tex. 221 and Shaw v. Brown, 41 Tex. 449. Neither of these cases supports the claim under the facts in this case. As said in Sherrick v. Wyland, 14 Tex. Civ. App. 299, 37 S. W. 345:

"It has often been ruled, in this state and elsewhere, that fees of counsel, incurred in prosecuting a suit for or defending against a wrong, are not ordinarily recoverable as actual damages, because they are not considered proximate results of such wrong. Landa v. Obert, 45 Tex. 547; Railway Co. v. Oram, 49 Tex. 346; Findley v. Mitchell, 50 Tex. 147; Railway Co. v. Wave, 74 Tex. 50, 11 S. W. 918; Flack v. Neill, 22 Tex. 253. In cases where the wrong consists of a malicious act, or the perpetration of a fraud, in which punitory damages are claimed, evidence of such losses is admissible to be considered by the jury in determining the amount which should be allowed as such damages."

See, also, the case of Closner v. Chapin (Tex. Civ. App.) 168 S. W. 375. The opinion in the last case was written by the present Chief Justice of this court, in which a discussion is had relating to cases of tort or breach of contract, where attorney's fees may be allowed as a part of the damages. Appellee evidently is not so sure of his right to a judgment for attorney's fees, for he says, "Appellee is willing to remit the sum of $500 rather than have the case reversed," and we shall take him at his word.

We have considered every assignment of error presented, all contentions thereunder, and they are all overruled. As appellee has indicated his willingness to remit the item of $500 recovered as attorney's fees, the judgment of the trial court is affirmed for the sum of $5,620.50, with interest from the date of the judgment in the trial court.