**Opinion issued April 5, 2013**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-09-00728-CV

———————————

**PETER FAZIO, SHARI FAZIO, AND ERIC FAZIO, Appellants**

**V.**

**CYPRESS/GR HOUSTON I, L.P., CYPRESS/GR HOUSTON, INC., AND CYPRESS EQUITIES, INC., Appellees**

**\*\*\***

**CYPRESS/GR HOUSTON I, L.P., CYPRESS/GR HOUSTON, INC., AND CYPRESS EQUITIES, INC., Appellants**

**V.**

**PETER FAZIO, Appellee**

**On Appeal from the 129th District Court**

## OPINION DISSENTING FROM THE GRANTING OF EN BANC RECONSIDERATION

For over one-hundred and fifty years, Texas has recognized that in fraud cases "[r]escission is an equitable remedy and, as a general rule, the measure of damage is *the return of the consideration paid, together with* such further special damage or expense as may have been reasonably incurred by the party wronged . . . ." *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 345 (Tex. 2011) (quoting *Smith v. Nat'l Resort Cmtys., Inc.*, 585 S.W.2d 655, 660 (Tex. 1979)). In *Wintz v. Morrison*, the Texas Supreme Court explained:

> Where one sells a herd of horses which he knows to be infected . . . and *conceals the disease from the buyer*, who buys in ignorance of the disease and for a sound price, the buyer may claim a rescission of the contract, . . . or, *without demanding a rescission . . .* , the buyer may claim damages equivalent to the value of such as have died, *and the difference between the present value of the living and the price paid for them*, with interest on said sums from the date of sale; and also the value of the care, attention and expense of the buyer in preserving the herd.

17 Tex. 372, 373 (1856) (emphasis added).

The reason that such damages are allowed in fraud cases is that "on a rescission of a contract the contract is avoided ab initio," and the wronged party is entitled to be returned to its position "as if no contract had ever been made." *Hunt*

2

*Cnty. Oil Co. v. Scott*, 67 S.W. 451, 452 (Tex. Civ. App. 1902, writ ref'd). In short, "[c]omplete and full justice is a fundamental doctrine of equity jurisprudence, and if damages, as well as rescission, are essential to accomplish full justice, they will both be allowed." *Holland v. W. Bank & Trust Co.*, 118 S.W. 218, 218 (Tex. Civ. App. 1909, no writ).

The panel majority, fully understanding the above fundamental legal principles, held that appellant, Peter Fazio, is entitled to be restored to his position as if he had not entered into a contract to purchase real property from appellees, Cypress/GR Houston I, L.P., Cypress/GR Houston, Inc., and Cypress Equities, Inc. (collectively, "Cypress"). The panel majority based its holding on the jury's unanimous finding, from clear and convincing evidence, that Cypress committed fraud against Fazio in selling him the property and "the harm to Fazio resulted from [the] fraud." In regard to ascertaining what sum of money "would fairly and reasonably compensate" Fazio for his fraud-based damages, the trial court asked the jury to determine (1) the "difference between the price the Fazios paid for the Property and the amount they received when they sold the Property" and (2) the "difference, if any, between the price the Fazios paid for the Property and the value of the Property at the time" the parties executed the purchase agreement.

As noted by the en banc majority, the jury's fraud finding is based on the fact that Cypress withheld certain material information from Fazio regarding the

3

financial condition of the property's primary tenant, Garden Ridge. Fazio purchased the property on October 31, 2003, and Garden Ridge made its rental payments in November and December. However, its January 2004 rental check bounced, and it declared bankruptcy in February 2004. Although Fazio attempted to re-lease the property, he was unable to do so and had to sell it, incurring a substantial loss. Thus, the jury could have reasonably inferred that Cypress, which had material information that Garden Ridge was in such serious financial distress that it was "restructuring" and "needed to reduce [its] occupancy costs at your premises," unloaded the property onto Fazio so it would not incur the loss that he ultimately sustained when Garden Ridge did, in fact, default. When Garden Ridge defaulted, less than three months after Fazio purchased the property, the property lost what Cypress had represented to him as "currently reported absolute net income of $805,040."

Accordingly, as noted by the panel majority, in order to restore Fazio to the position he held prior to becoming a victim of Cypress's fraud, the trial court, as a matter of law, should have awarded him $3,961,524.60, which, as the jury found as a matter of simple arithmetic, is the "difference between the price the Fazios paid for the Property and the amount they received when they sold the Property." *See Wintz*, 17 Tex. at 373 (explaining fraud victim entitled to recover the difference between the price paid for diseased horses and "the present value of the living"

4

horses "with interest on said sums from the date of sale."). Such an award would have restored to Fazio the consideration that he paid for the property, with Cypress keeping the remaining $3,705,475.40 that Fazio paid to it. To the extent that the trial court disregarded the jury's finding and entered its take-nothing judgment against Fazio, the panel majority correctly held that the trial court erred.

Based on the facts of this case, the difference between the price the Fazios paid for the property and its value at the time of purchase, prior to Garden Ridge's default, simply would not have restored Fazio to his position prior to becoming a fraud victim. Although the property may have been worth what he paid for it at the time he entered the contract, Fazio simply would not have entered into the contract had he known the specific material information about Garden Ridge's upcoming "restructuring" that Cypress wrongfully withheld from him. In short, he would not have purchased the property had he known, as did Cypress, that its primary tenant was about to default and, consequently, the property would lose its "currently reported absolute net income of $805,040" and the value of the property would drop drastically.

In support of its assertion that the "only" appropriate measure of damages in this case is the difference between what Fazio paid for the property and the actual value of the property "at the time of sale," Cypress relies on *Arthur Andersen & Company v. Perry Equipment Corporation*, 945 S.W.2d 812, 817 (Tex. 1997).

5

However, as expressly noted by the Texas Supreme Court, the plaintiff in *Arthur Andersen*, an accounting-malpractice case, actually *elected not to recover on its fraud claim,* but rather on its claim for misrepresentation under the Texas Deceptive Trade Practices Act. *Id.* at 814; *see* TEX. BUS. & COM. CODE ANN. § 17.46(b) (Vernon 2011). The court noted that "direct damages for misrepresentation" are measured in "two ways," both determined "at the time of sale." *Id.* at 817. But it further explained that the plaintiff was also entitled to recover for losses "attributable to subsequent events" for which the defendant "should bear legal responsibility" and that such

> [s]ubsequent losses . . . *are recoverable only if the misrepresentation is a producing cause of the loss*. . . . Without this limitation, an investor could shift the entire risk of an investment to a defendant who made a misrepresentation, even if the loss were unrelated to the misrepresentation. The basis of a misrepresentation claim is that the defendant's false statement induced the plaintiff to assume a risk he would not have taken had the truth been known. But to allow the plaintiff to transfer the entire risk of loss associated with his investment, *even risks that the plaintiff accepted knowingly or losses that occurred through no fault of the defendant*, would unfairly transform the defendant into an insurer of the plaintiff's entire investment.

*Id.* (emphasis added) (citations omitted). Because the plaintiff did not establish "how much of its loss occurred at the time of the sale" and "how much was attributable to subsequent events for which Arthur Andersen should bear legal responsibility," the court remanded the case for a new trial. *Id.* It did so because

6

the plaintiff did present "evidence that Arthur Andersen's misrepresentation was a producing cause of [the plaintiff's] loss." *Id.*

In the instant case, Fazio is entitled to recover for his subsequent losses because there is evidence that but for Cypress's withholding of specific critical information from Fazio about Garden Ridge's upcoming "restructuring," he simply would not have incurred the risk of buying the property. And the jury's finding that the "difference between the price the Fazios paid for the Property and the amount they received when they sold the Property" was $3,961,524.60 reflects the loss that Fazio ultimately sustained as a result of Cypress's fraud. Thus, Cypress's reliance on *Arthur Andersen* is misplaced. And, more important, the supreme court in *Arthur Andersen* did not address fraud remedies and said nothing inconsistent with its well-established precedent regarding the right of a fraud victim to seek rescission and/or recovery of his consideration.

Regardless, the en banc majority has voted to overrule the panel's holding on damages. En banc consideration should be rarely granted, and it is "disfavored":

> *En Banc Consideration Disfavored.* En banc consideration of a case is not favored and should not be ordered *unless necessary* to secure or maintain uniformity of the court's decisions or unless extraordinary circumstances require en banc consideration.

TEX. R. APP. P. 41.2 (c) (emphasis added). Here, the panel majority's opinion, which was in accord with over one-hundred and fifty years of Texas law, did not

conflict with any prior precedent of this Court. Nor did the panel majority commit any error of such magnitude that it amounted to an "extraordinary circumstance" requiring en banc review.

Rather, it appears that the en banc majority simply disagrees with the panel majority's original holding on the appropriate measure of damages. But this simple disagreement does not meet the high en banc standard:

> The standard for en banc consideration is not whether a majority of the en banc court may disagree with all or a part of a panel opinion. Neither is an assertion that an issue is "important" sufficient. Rather, when there is no conflict among panel decisions, the existence of "extraordinary circumstances" is required before en banc consideration may be ordered.

*Thompson v. State*, 89 S.W.3d 843, 856 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (Jennings, J., concurring in denial of en banc consideration). And, of course, an intermediate appellate court, sitting en banc, should never overrule a panel decision that simply corrects a trial court's error.

In sum, the panel majority, in accord with well-established precedent, simply corrected a trial court error, rendered the judgment the trial court should have rendered, and, in doing so, accorded Fazio complete and full justice. The en banc majority has erred in granting en banc consideration and undoing the panel majority's true and correct judgment. Accordingly, I respectfully dissent from the granting of en banc consideration.


Terry Jennings
Justice

Justice Bland, joined by Chief Justice Radack, and by Justices Massengale, Brown, and Huddle, for the en banc court.

Justice Massengale, concurring.

Justice Keyes, joined by Justices Jennings, Higley, and Sharp, dissenting.

Justice Jennings, joined by Justices Keyes, Higley, and Sharp, dissenting from granting of en banc reconsideration.